EDWARD C. KEHR

v.

WILLIAM H. SNYDER.

*Filed at Mt. Vernon June 13, 1885.*

ACCRETIONS—*as to lands bordering upon a river—rule of adjustment as between adjacent riparian owners.* A tract of land bordering upon the Mississippi river was divided into parcels, some of which subdivisions or lots extended to the river bank, as it then was. These lots became the property of various persons. Subsequently there were accretions along the river front, and in adjusting the matter of such accretions among the several adjacent riparian owners, it was *held,* the proper mode was, to measure the entire river front as it was found to be when the lots were laid out, and note the aggregate number of feet frontage, as well as that of each lot; then measure a line drawn as nearly as may be with the middle thread of so much of the stream as lies opposite the shore line so measured; then divide the thread line into as many equal parts as there are lineal feet in the shore line, giving to each proprietor as many of these parts as his property measures feet on the shore line; and then complete the division by drawing lines between the points, designating the lot or parcel belonging to each proprietor both upon the shore and river lines.

APPEAL from the Circuit Court of St. Clair county; the Hon. AMOS WATTS, Judge, presiding.

Mr. EDWARD C. KEHR, *pro se:*

The rule for the division of accretions is, either—

*First*—To apportion them between the respective riparian owners in the proportion in which the new shore line bears to the old. *Deerfield* v. *Ames,* 17 Pick. 41; *Jones* v. *Johnson,* 18 How. 150; 1 Blackf. 209; *Wonson* v. *Wonson,* 14 Allen, 71; *Batchelder* v. *Kenison,* 51 N. H. 496; *Railroad Co.* v. *Hannon,* 37 N. J. L. 276. Or,—

*Second*—To extend the side lines out from their respective termini on the old shore, at right angles with the course of the river. *Knight* v. *Wilder,* 2 Cush. 199; *Stone* v. *Boston S. and I. Co.* 14 Allen, 230; *Clark* v. *Campan,* 19 Mich. 325;

*Gas Light Co.* v. *Industrial Works*, 28 id. 122; *Miller* v. *Hepburn*, 8 Bush, 326; *Wood* v. *Appal*, 63 Pa. St. 210; *Thornton* v. *Grant*, 10 R. I. 477; *Aborn* v. *Smith*, 12 id. 355; *Manchester* v. *Point, etc.* 13 id. 355; Gould on Waters, sec. 162.

If either of these rules is found to be the true rule of law, then the circuit court erred in refusing the declarations of law asked by the appellant, and the judgment below is erroneous. The appellant contends that the rule secondly stated is the one applicable to this case, although the one first stated is more advantageous to him in this instance. Either rule will defeat the appellee.

The rule claimed by the appellee, and adopted by the court below, finds no support whatever in the law. Though often urged, it has uniformly been rejected by the courts. "One common principle which pervades all modes of division is, that no regard is paid to the direction of the side lines between contiguous proprietors." Note to *Hagan* v. *Campbell*, 33 Am. Dec. 280.

Messrs. WILDERMAN & HAMILL, for the appellee:

The plaintiff's lot being bounded on the Mississippi river, his title extends to the thread or middle of the stream. See *Washington Ice Co.* v. *Shortall*, 101 Ill. 46; *Warren* v. *Thomaston*, 75 Maine, 329; *Luce* v. *Carley*, 24 Wend. 451.

The thread of the stream is the middle line between the shores, irrespective of the depth of the channel or the direction of the current, taking it in the natural and ordinary stage of the water. *Warren* v. *Thomaston*, 75 Maine, 329; *McCullough* v. *Wall*, 4 Rich. (S. C. L.) 68; *Trustees, etc.* v. *Dickenson*, 9 Cush. 544; Tyler on Boundaries, 75-77; *Deerfield* v. *Ames*, 17 Pick. 41; Angell on Water-courses, (7th ed.) sec. 10, note 2.

There is no fixed rule for the division of alluvium accrued to uplands bounded upon rivers, among the proprietors of the adjoining lots. *Winnisimmet Co.* v. *Wyman*, 14 Allen, 432.

The rising of the sand-bar known as "Arsenal Island," in the river, does not in the least change the middle line of the river, but that line must be surveyed as if the island were under water. *Missouri* v. *Kentucky,* 11 Wall. 395; Tyler on Boundaries, 76, 77; Angell on Water-courses, (7th ed.) sec. 44; Boone on Real Prop. sec. 254; *People* v. *Canal Appraisers,* 13 Wend. 355.

A line drawn at right angles to the thread of the stream,— not the current of the water,— from the river end of the dividing line between lots 233 and 232, on the upland, shows appellant's fence to be on appellee's land.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This is an action of ejectment, brought by William H. Snyder, the appellee, against Edward C. Kehr, the appellant, to recover a triangular piece of land situate on the eastern bank of the Mississippi river, in East St. Louis, described in the declaration as "that part of lot 233, in the third subdivision of Cahokia commons, which lies west of the right of way of the East St. Louis and Carondelet railway, and extends to the center of the Mississippi river."

The third subdivision of Cahokia commons was laid out and platted by the proper authorities in 1860, under the provisions of the act of 1841, (see Laws of 1841, page 65,) and constitutes a part of United States survey No. 759. The western tier of lots of this subdivision is bounded on the west by the Mississippi river, and when laid off, in 1860, the eastern bank of the river marked their shore line. Of these lots appellant owns No. 232, and appellee No. 233, the latter lying immediately north of the former, and both fronting the river. Since they were laid off, in 1860, a large body of land, or accretions, has formed in front of said third subdivision of Cahokia commons, so that the shore boundary of these lots is not the same as it was in 1860, when laid out and platted.

The strip of land in controversy is a part of these accretions, and whether it belongs to the plaintiff or to the defendant depends entirely upon what rule is to be adopted in making the division of the accretions. If the line dividing the lots of plaintiff and defendant as originally laid off, and terminating on the shore line as it then existed, is to be simply extended through the accretions to the center of the river, without any change of direction or deflection of the line, it is conceded the land in dispute belongs to the plaintiff, but not otherwise. The position is also taken in appellee's brief, that "a line drawn at right angles to the thread of the stream,— not the current of the water,—from the river end of the dividing line between lots 233 and 232, on the upland, shows appellant's fence to be on appellee's land,"—or, in other words, that the land belongs to the plaintiff. While the testimony does not distinguish as clearly between the channel or current and the middle thread of the river as it might, yet when the whole of the evidence is considered we do not think it warrants the claim of appellee. Treating this as a material question in the case, appellee must be held responsible for the consequences if it has been left in doubt.

As to what is the proper rule for the division of accretions in cases of this kind, is a subject that has been so often and ably discussed by the courts of last resort in this country, that we do not deem it necessary, if, indeed, proper, to do anything more than to merely state the proper rule, as we understand it, and refer to some of the cases in which a full discussion of it will be found.

The rule as stated in appellant's third proposition, which the court refused to hold as law, we regard as substantially correct,—that is to say, "measure the entire river front of survey 759 as it existed in 1860, when the third subdivision of Cahokia commons was first laid out," and note the aggregate number of feet frontage, as well as that of each parcel or lot; then measure a line drawn as near as may be with

the middle thread of so much of the stream as lies opposite the shore line so measured. Having done this, divide the thread line thus measured into as many equal parts as there are lineal feet in the shore line, giving to each proprietor as many of these parts as his property measures feet on the shore line; then complete the division by drawing lines between the points, designating the lot or parcel belonging to each proprietor both upon the shore and river lines. This rule seems to be reasonable, and is well supported by authority: *Gray* v. *Deluce*, 5 Cush. 9; *Thornton* v. *Grant*, 10 R. I. 477; *Aborn* v. *Smith*, 12 id. 370; *Miller* v. *Hepburn*, 8 Bush, 326; *Knight* v. *Wilder*, 2 Cush. 199. The rule adopted by the court below is practically without authority to support it. An examination of the cases will show that in the division of accretions the side lines between adjoining riparian owners are, as a general proposition, wholly disregarded. Thus, in *Manchester* v. *Point Street Iron Works*, 13 R. I. 355, it is said: "One common principle which pervades all modes of division is, that no regard is to be paid to the direction of the side lines between contiguous proprietors." (See, also, in this connection, note to *Hagan* v. *Campbell*, 33 Am. Dec. 280.) In Gould on Waters, sec. 162, it is said: "In all cases where practicable, every proprietor is entitled to a frontage of the same width on the new shore as on the old shore, and at low water mark as well as high water mark, *without regard to the side lines of the upland*, unless referred to as guides in particular grants, or established as boundaries by agreement or conduct of the co-terminous proprietors, or the acts of public authorities."

There may be special circumstances in some cases requiring a modification of the rule here laid down; but as between the present parties, we see nothing in the record before us to take the case out of the operation of the rule. Indeed, there may be special circumstances, as between some of the parties owning portions of this river front, that would

make it inequitable, as between themselves, to enforce the rule as here stated. But that is no reason, assuming such cases to exist, as is intimated, why the general rule should not be applied as between the present parties.

The judgment of the circuit court will, for the reasons indicated, be reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Judgment reversed.*