CRANDALL *et al.* v. ALLEN, *Appellant.*

**Division Two, December 7, 1893.**

**Land and Land Titles:** RIPARIAN OWNERS: ACCRETIONS. Where the land of plaintiff bordered on the Missouri river and was situated north of defendant's land which it cut off from the river, and a portion of plaintiff's land washed away until a part of the land of defendant bordered on the river, and afterwards accretions gradually formed along the east side of plaintiff's remaining land, and at the same time along the north side of defendant's land, plaintiff will be entitled to the whole of such accretions. (*Naylor v. Cox*, 114 Mo. 232, *distinguished.*)

118  403
149  244
d151  356
118  403
164  372
118  403
h173  203

*Appeal from Cole Circuit Court.*—HON. E. L. EDWARDS, Judge.

AFFIRMED.

*Silver & Brown* for appellant.

The court erred in refusing instructions numbered 1 and 2 as asked by defendant. That land formed by accretion belongs to the owner of the contiguous tract to which the accretion is made, is a fundamental principle. Land not originally riparian becomes so when the river has reached it by gradually washing away all the intervening land. *Welles v. Bailey*, 55 Conn. 292. And where the lot originally not riparian becomes so by such change of the river-bed, there attach to it all the incidents of riparian land. *Welles v. Bailey, supra.* Among these incidents is that of the right of appropriating to itself gradual accretions from the river where, by a change in the movement of the bed, it begins to recede and leave soil upon its front. *Naylor v. Cox*, 114 Mo. 232; *Welles v. Bailey, supra; Rees v. McDaniel*, 114 Mo. 145. And this right of appropriation does not cease when the original limits have been restored.. *Welles v. Bailey, supra.*

*W. S. Pope* and *J. R. Edwards* for respondents.

Instruction numbered 1 of defendant was rightly refused. It was not a question as to what defendant was entitled to recover. The questions in the case, which were fully submitted to the jury in the first instruction on behalf of plaintiff, were, *first*, that plaintiff was the owner of the land described in his petition; *second*, that defendant was in possession; and, *third*, that the land sued for accreted to the mainland of

which plaintiff was the owner, and the fact that defendant was entitled, or may have been, to an accretion to the front of his land was not an issue in this case, and instruction numbered 1 should have been refused as it was.

GANTT, P. J.—This is an action of ejectment for eight and eighteen-hundredths acres of land described by metes and bounds.    Plaintiffs assert title to it as a part of the southeast fractional quarter of section 21, township 45, range 12, and defendant claims it as an accretion to lands he owns in section 28, in the same township and range, to-wit: the northwest quarter of the northeast quarter and west half of northeast quarter of northeast quarter of said section 28.

On the trial and in his answer, defendant admitted he was in possession of all the lands described in the petition, but disclaimed all title or right to "so much of said land as lies north of the line between sections 28 and 21, in township 45, range 12, and west of a line beginning at a point on said line between said sections 28 and 21, sixteen chains east of the northwest corner of the northeast quarter of said section 28 and extending north by a straight line to the slough of the Missouri river," and denied plaintiffs' right to the remainder of the land.    It was admitted that plaintiffs, as the heirs-at-law of Floyd Crandall; their father, the original plaintiff in this cause, now deceased, were the owners of the southeast fractional quarter of section 21, under mesne conveyances from the original patentee to said land from the United States, and that defendant was likewise the owner of the northwest quarter and west half of the northeast quarter of the northeast quarter of section 28.

It was shown that the Missouri river borders on and constitutes the eastern boundary line of said south-

east fractional quarter of section 21; that the direction of the river along the eastern side of this land is from the northwest to the southeast; that since it was originally surveyed, and patented by the government of the United States, six or seven acres of it has washed away, but has since been restored by accretion to the eastern boundary.

Defendant's evidence tended to show: *First*, that so much of the land sued for as lies north of the line between sections 28 and 21, township 45, range 12, and east of a line beginning at a point on said line between sections 28 and 21, sixteen chains east from the northwest corner of the northeast quarter of said section 28, and extending north by a straight line to the Missouri river, had been washed away by the Missouri river; *second*, that said washing and cutting in extended in on defendant's land lying south of the line between sections 21 and 28, leaving defendant's land south of said line bordering on the Missouri river; *third*, that afterwards land began to re-form to defendant's land so bordering on the Missouri river, and that said land so formed by degrees, that is by accretion, and gradually extended over the line between sections 21 and 28; that the land so formed, and north of said section line between sections 21 and 28, is that part of the land in suit which defendant claims; *that said land is east of plaintiffs' land in section 21, and north of defendant's land in section 28;* that the river runs from the northwest to the southeast.

Defendant also introduced evidence tending to show that he had known the land since 1857; that he had bought in 1880, and claimed possession of it since then, and fenced it in about four years before suit was brought.

Thereupon the court instructed the jury on behalf of the plaintiff as follows:

"1. If the jury believes and finds from the evidence that the land described in plaintiff's petition was in the possession of the defendant at the commencement of this suit, and that, plaintiff was the owner of the same, or that the same was formed by accretion made to the main land, of which the plaintiff was the owner, then they will find for the plaintiff, and also find for him for damages whatever the reasonable rental value of the land is worth from the second day of February, 1888, until the present time; and also the value of timber taken by defendant, and will also assess the monthly rents and profits at whatever they may believe from the evidence that such is worth, not to exceed $5 per month.

"2. In an instrument made either by the government or by an individual, if a boundary, such as a river, is called for, the tract must have that boundary.

"3. The call for a natural object in a deed or grant, as a river, will control both course and distance, and if the plaintiff's deeds called for the Missouri river, and that defendant had and still holds the possession thereof wrongfully from plaintiff, they will find for the plaintiff."

"5. Although the jury may believe that the portion of lands contained in the deeds to plaintiff at any time washed entirely away, or in part, after the same was surveyed and patented by the United States government, yet if they further find that the land in controversy is a re-formation of said lands on the bed of the river where said lands formerly existed, then plaintiffs are entitled to recover in this action if it be shown that the defendant unlawfully detained the same.

"6. If the jury finds that, if the plaintiffs and those under whom they claim were in possession and the owners of the land in controversy, then the fact that the lands had washed away and other lands

formed on the bed thereof by accretions does not change or deprive plaintiffs of title to same."

The court gave all the foregoing instructions asked by plaintiffs and defendant objected and excepted.

The court then at request of defendant gave the following instructions:

"3. The court instructs the jury that the term accretion as used in these instructions means portions of soil added to that already in possession of the owner by gradual deposit caused by the washing of the river.

"4. The court instructs the jury that if they find for plaintiff for only a part of the land claimed by him in this suit, they will express in the verdict the part of said land plaintiff is so entitled to recover.

"5. The court instructs the jury that an accretion partakes of the character of the land by the conveyance of the latter, and it makes no difference in this case whether the alleged accretion was formed to defendant's land before or since he became the owner thereof, provided the jury find it actually did so form by way of accretion.

"6. The court instructs the jury that if they shall find and believe from the evidence that for ten years next before the bringing of this action the defendant was in the public, open and adverse possession of the land in dispute, claiming the ownership thereof, then such possession and claim of ownership constitutes a good defense for defendant, and the jury will find for him."

And refused the following also prayed by defendant:

"1. The court instructs the jury that if they believe from the evidence that the defendant is the owner of the northwest quarter of the northeast quarter,

and the west half of the northeast quarter of the northeast quarter, of section 28, township 45, range 12, in Cole county, Missouri, which at the time of the government survey of the same was cut off from the Missouri river by .intervening land, but that said intervening land was washed away by change of the river bed until a portion of defendant's land bordered on the river, and that afterwards additions were made to defendant's land so fronting on the river by gradual and imperceptible accretions or additions thereto by the sediment or deposit of the river, then defendant is entitled to all such accretions to his front, to the present margin of the river, and the jury will so find.

"2. The court instructs the jury that although a tract of land may not originally have bordered on a river, being cut off therefrom by an intervening tract, yet, if such intervening tract is washed away until the remoter tract borders on the river, the latter then becomes riparian and is entitled to the riparian right of accretions."

And defendant duly excepted. There was a verdict and judgment for plaintiffs.

The appellant, upon the foregoing facts submits that the main question involved in his appeal is this: "Although, a tract of land may not originally have bordered on a river, being separated therefrom by an intervening tract, yet if such intervening tract is washed away until the remoter tract borders on the river, the latter then becomes riparian, and is entitled to the riparian rights of accretion, even though such accretion extends beyond the original line dividing the two tracts." *Naylor v. Cox*, 114 Mo. 232, is cited as authority for this position, but it is a misapprehension of that case, to apply it to the undisputed facts of this case.

In *Naylor v. Cox*, the accretion began to the island, between which and the Howard county shore, the Missouri river ran. The accretion gradually pushed the river north until it cut away a large portion of the bank on the north, or Howard county side, the river thus changing its bed, but still preserving, as long as it ran, a water front to each tract of land. We held that the river was a natural boundary on defendant's land, and as it had cut away and destroyed a part of his land, his boundary receded as the river encroached upon him, and although the accretions to the island on the opposite side increased until they passed the line of survey, which once defined defendant's southern boundary, they belonged to the owner of the island. With that decision we are still satisfied, but we think this record presents a very different proposition.

In the case at bar, both proprietors own their lands on the west bank of the Missouri river; the plaintiffs' land lying immediately north of, and adjoining defendant's on the south. The proposition of defendant that if the river cut away, and destroyed all the land that originally intervened between his land in section 28, and the river, until the river formed in fact his eastern or northern boundary, he thereby became a riparian owner, is true enough in one sense, but it is not true, either in reason, or upon authority, that it would enable him by means of the accretion to his own shore, to appropriate all the alluvion or accretions that formed in front of his neighbors shore on the same side of the river or water front.

We find nothing in the record that questions that this accretion in front of plaintiff's land *formed to his shore*, but it is assumed by defendant that if it *began to form* on the north of his land as the river then ran until it extended up in front of plaintiff's boundary on the same river, it then became defendant's, by reason

of the alluvion having first made its appearance on his northern boundary. The inevitable consequence of this claim would be, if carried to its logical conclusion, that defendant would thus become possessor of the river front not only in front of plaintiff, but of all other riparian owners, wherever the accretion extended east of a line drawn north from a point on the line between sections 21 and 28, sixteen chains east of the northwest corner of the northeast quarter of said section number 28, if it was continuous. In a word, the contention is simply this, that if in the forming of accretions along a river front, it can be shown that the points of contact was first made to lands of one of the riparian owners, he is entitled thereby to the whole accretion subsequently made to the lands of other riparian owners, on either side of him, and although this would thus cut off their water boundaries and privileges. As before said, there is no warrant for this claim in *Naylor v. Cox*, or any other case within our knowledge.

On the contrary, the authorities are numerous and well considered, which scrupulously preserve to each adjoining riparian owner his water boundaries and privileges. In *Lamprey v. Metcalf*, 53 N. W. Rep. 1139, the supreme court of Minnesota, in discussing the reason for the law, giving accretions and relictions to the riparian owner, says: "The reasons usually given for the rule are either that it falls within the maxim *de minimis lex non curat*, or that, because the riparian owner is liable to lose soil by the action or encroachment of the water, he should also have the benefit of any land gained by the same action. But it seems to us that the rule rests upon a much broader principle, and has a much more important purpose in view, viz: to preserve the fundamental riparian right— on which all others depend, and which often consti-

tutes the principal value of the land—*of access to the water*. The incalculable mischiefs that would follow if a riparian owner is liable to be cut off from access to the water, and *another owner sandwiched in between him and it, whenever the water line had been changed by accretions or relictions, are self evident, and have been frequently animadverted on by the courts.*"

When the witnesses were asked in front of whose land the river now ran, they answered, "as much in front of plaintiff's as defendant's," or "about as much of one as the other," and defendant said, that after the accretion formed, "it was *east of plaintiff's land,* and *north of mine.*"

The apportionment of alluvion is by no means new in judicial history of this country, and many rules have been suggested, and adopted, to secure to each riparian owner his just proportion of the accretions.

Thus, in *Deerfield v. Arms*, 17 Pickering, 41, Chief Justice SHAW quoted and adopted a rule of the civil law found in Denisart's "Collection of New Decisions," in France, 1783, and says of it, "The rule suggested in this work is founded upon the obvious consideration already alluded to, that in many cases, lands which border upon navigable rivers, derive a great part of their actual value from that circumstance, and from the benefit of the public easement thereby annexed to such lands, and that, being wholly deprived of the benefit of that situation, would operate as a great hardship and do real injustice to a riparian proprietor, although he should obtain his full proportion of the land measured by the surface. This injustice will be avoided by the proposed rule, in conformity with which each proprietor will take a larger or smaller proportion of the alluvial formation, *and of the newly formed river or shore line, according to the extent of his original line on the shore of the river.*"

After giving the rule, he says further: "This mode of distribution secures to each riparian proprietor the benefit of continuing to hold to the river shore, whatever changes may take place in the condition of the river, by accretion, and the rule is obviously founded in that principle of equity, upon which the distribution ought to be made." See also Gould on Waters, secs. 162, 163, 164, and cases cited. *Gray v. Deluce,* 5 Cushing, 9; *Thornton v. Grant,* 10 R. I. *loc. cit.* 487; *Kehr v. Snyder,* 114 Ill. 313.

In this case the court in effect instructed the jury that, if this was accretion to plaintiff's land on his river front, he was entitled to it, and declined to instruct that if the accretions began on defendant's land and extended north in front of plaintiff's lands on the river, defendant was entitled to it, though its effect might be to cut off plaintiff from his water boundary and rights. We think the circuit court was correct under the facts of the case.

Plaintiff was the exclusive riparian proprietor as to these accretions that formed on the east of his land, on the Missouri river, and was most clearly entitled to recover them. As was said in *Manchester v. Iron Works,* 13 R. I. 355, and approved in *Kehr v. Snyder,* 114 Ill. 313, "one common principle which pervades all mode of division (of accretion, or alluvion) is, that no regard is to be paid to the direction of the side lines between contiguous proprietors." In all cases, when practicable, every proprietor is entitled to a frontage *of the same width on the new shore as on the old shore,* and at low water mark as well as high water mark, without regard to the side lines of the upland." Gould on Waters, sec. 162.

Giving plaintiff his original river front would necessarily secure him the land in suit. We have exam-

ined the other assignments, but find no substantial error, and the judgment is affirmed. All of this division concur.