GEORGE G. PEARSON et al., v. JOHN R. HEUMANN et al., Appellants.

Division One, June 16, 1922.

1. **ACTION AT LAW: Tried by Court: No Instructions: Appellate Practice.** A suit whose object is to obtain a judgment declaring

Pearson v. Heumann.

plaintiffs to be the owners in fee of the land involved is an action at law, triable by a jury; and a jury being waived and the cause tried by the court, and no objection having been made in the course of the trial to the admission or rejection of testimony, and no declarations of law having been asked or given, the sole question for adjudication on appeal is whether there was substantial evidence in support of the judgment by which plaintiffs were declared to be the owners.

2. **ACCRETIONS: Below Shore Land: Connections.** Where the question involved is the title of accreted lands, the fundamental fact to be proved is the ownership of shore lands to which the accretions were made; and where plaintiffs claim they were accretions to a tract of shore lands owned by their ancestor, and the evidence shows that they are at least a quarter of a mile below said shore lands, they must, in order to recover, in some way connect them with said parent tract.

3. ——: ——: ——: **Intervening Shore Land.** Where the river began to recede from the front of one tract and continued to recede southerly from the front of a second tract, so that the projection was still north of a third tract which intervened between the second tract and the land in suit, the land in suit cannot be said to be accretions to the second tract, on the theory that, as the shore line of the second tract moved easterly and occupied the land uncovered by the recession, a new front was formed facing south, which moved across the thirty-rod front of the third tract and formed the twenty-five acres in question in the space vacated by the receding river between the third tract and its front. If plaintiffs' theory were correct they would take the only water front pertaining to the third tract, and the lands would be accretions to the first tract rather than to the second.

Appeal from Saline Circuit Court.—*Hon. Samuel Davis*, Judge.

REVERSED.

*W. H. Meschede* and *Robert M. Reynolds* for appellants.

(1) The plaintiffs claim title to the tract of land involved as an accretion to a tract described and referred to in the evidence as the "Luster" tract. The Luster tract lay a quarter of a mile and over up the Missouri

River north of the land herein involved. It was bounded on the south by "Fish Creek," or the old bed thereof, which emptied into the Missouri River at its southeast corner. Its only river frontage was its eastern line, which runs north from the mouth of Fish Creek along the river bank. It could only be entitled to accretions which were made against this shore line and which would lie to the east thereof, and could not be entitled to any of the accretions made to the lands south of its south line, or south of the old bed of Fish Creek. Accretions go to the land against which they are made. Cooley v. Golden, 117 Mo. 48; Benne v. Miller, 149 Mo. 228; Swearingen v. St. Louis, 151 Mo. 348. (2) The land in dispute, together with other land lying immediately north thereof, was deposited against the Burnett and Heumann tracts and belongs to the land against which it was deposited. This particular twenty-five acres in question lies immediately east between the Heumann tract and the river and was deposited against the Heumann tract to the river and belongs to the Heumann tract. Benne v. Miller, 149 Mo. 228; Swearingen v. St. Louis, 151 Mo. 348. (3) Heumann and Burnett were entitled to divide the whole body of accretions made south of Fish Creek and against their land between themselves in proportion to the original river frontage of each. The length of the original shore line of each was about the same and the diversion of the whole body of accretions between them would give the land in controversy lying east of the Heumann tract to the Heumann land and the land to the north thereof to the Burnett tract. Crandall v. Allen, 118 Mo. 412.

*Alf F. Rector* for respondents.

(1) It is expressly held in Frowein v. Poage, 231 Mo. 83, that a suit brought to ascertain and determine the title to made land where the plaintiff introduced evidence to show that the land was accretions to his land, and the defendant introduced evidence to show that the land was accretions to his land, was purely a suit at law.

This action is on all fours with the above case, and is purely an action at law, and having been tried by the court a jury being waived, the finding and judgment will not be disturbed on appeal, unless it is shown that there was no substantial evidence on which to base the finding and judgment of the court. Hays v. Cox, 185 S. W. 1164; Barton v. Faeth, 193 Mo. App. 401; Tracy v. Coppage, 213 S. W. 38; Stewart v. Asbury, 199 Mo. 123; Bank v. Fisk, 135 Mo. App. 8; M. F. G. Co. v. Ry. Co., 146 Mo. App. 355; Oellien v. Duncan, 148 Mo. App. 600; Elsea v. Smith, 273 Mo. 396.  (2)  The only question in this case was whether the twenty-five acres in controversy were accretions to plaintiffs' shore lands or accretions to the Heumann land, and the court having found the issue for the plaintiffs its finding and judgment is conclusive, and will not be reviewed on appeal if there is any substantial evidence to support the finding, and we submit that the evidence abundantly shows that the land in controversy accreted to the shore land of plaintiffs. (3)  There is no evidence whatever that Pearson held possession of any of the accreted lands, the thirty-three acres and the twenty-five acres, with the consent of Heumann or anybody else.  The evidence is undisputed that Pearson was in possession of both tracts from the time they formed against his shore land until March, 1919, when defendant just walked in and built a fence between the thirty-three acres and the twenty-five acres. Having owned the Luster tract for more than twenty years, having been in possession as owner when the accretions began to form, his title to the Luster tract followed day by day the accretions thereto.  Benne v. Miller, 149 Mo. 29.  (4)  The shore line of the Luster tract was 2200 feet when the accretions forming the thirty-three acres and the twenty-five acres began to accrete to the Luster tract in 1903, and both the thirty-three acres and the twenty-five acres were made by the same formation.  The plaintiffs are not claiming 2200 feet of river front, they only claim 1598 feet on the river front, commencing at the apex, thence up the river north

20 degrees east 450 feet to a stake, thence north 25 degrees east 1149 feet to a stake. Plaintiffs' shore land bordered on the river 2200 feet when the accretions began; then they were at least entitled to 1598 feet of river front after the accretions to the Luster tract, which included the thirty-three acres and the twenty-five acres, had formed. De Lassus v. Flaherty, 164 Mo. 361. (5) Complaint is made that the Luster deed does not give the plaintiff any river front except on the east. The evidence abundantly shows that the river receded toward the east in front of Nolke's land and plaintiffs' Luster tract. The river did run along the Luster tract. In 1900 steamboats ran close to the shore line thereof, and witness Nolke stated that the river now runs almost the same way it did before the accretions formed against the Luster land. But physical facts show this also as the accretions joined the shore line marked "Old River Banks" on the map. The authorities all agree that the owner of shore land bordering on the Missouri River from which the river recedes forming accretions to the shore land is the owner of the title to the accretions, which will extend to the river, including as much front on the river banks as he had shore front on the river before the accretions began to form, subject to be increased or decreased by whether or not the river line or bank increased or diminished by receding or making a change of its current. Benne v. Miller, 149 Mo. 228; De Lassus v. Flaherty, 164 Mo. 372; Crandell v. Allen, 118 Mo. 411 to 414.

BROWN, C.—Suit instituted August 13, 1919, by petition filed in said court under the provisions of Section 2535, Revised Statutes 1909, now Section 1970, Revised Statutes 1919, to try title to a tract of twenty-five acres of land in the Missouri River bottoms in Saline County, of which the defendant Romine is in possession, claiming under the defendant Heumann. The land is described in the petition as follows:

"Beginning at a stone the quarter section corner to Sections Nineteen and Thirty (19 and 30), Township

Fifty-one (51), Range Eighteen (18); thence south six degrees east 1127 feet to a stake; thence south six degrees east 150 feet to a stake; thence south sixty-four and one-half degrees east 921 feet to a stake; thence south thirty-two and one-half degrees east 500 feet to a stake; thence south thirty degrees east 1235 feet to a stake, the beginning point and the northwest corner of said twenty-five-acre tract; thence south thirty degrees east 1129 feet, to a stake on the bank of the Missouri River; thence north twenty degrees east up the bank of the Missouri River 450 feet to a stake; thence north twenty-five degrees east up the bank of the Missouri River 1149 feet to a stake, in the Nolke line; thence south eighty-four degrees west along a post and wire fence 1466 feet to the beginning point, said twenty-five-acre tract of land being accretions formed by the Missouri River to the lands formerly owned by George F. Pearson, deceased.''

George F. Pearson mentioned in the above description was the ancestor of the plaintiffs, under whom they claim by descent.

The tract of land to which the plaintiff claims this accretion was formed is called in this record the Luster tract, because on and before October 25, 1899, it was owned by one Josiah Luster, who, with his wife Mary, conveyed it on that date by warranty deed to one Judith Neff for $600, by the following description: ''Beginning at the southeast corner of Thomas Letty's land, thence down the channel of Fish Creek to its mouth, thence up the Missouri River to an agreed line between James S. Evans and William A. Reed—thence in a northwesterly direction to the Slough bank—thence in a southwesterly direction to the place of beginning—containing forty (40) acres more or less, all of the above described land being in Section Thirty (30) Township Fifty-one (51) Range Eighteen (18).''

On March 14, 1900, Judith Neff, for the same consideration and by the same description, conveyed it to George F. Pearson, the plaintiffs' ancestor.

As appears by these descriptions, this tract of land was bounded on the south by a stream called Fish Creek and on the east by the Missouri River. It is also admitted in the evidence that one Nolke acquired and owned the land fronting on the river north of the Luster tract. Fish Creek, which constituted the south line of the Pearson land, afterward disappeared from that locality, so that instead of running east to the Missouri River it turned down the bluff west of that particular part of the Missouri River bottom and flowed into the river by that route, but its old bed remained plainly visible on the ground for years, the fence posts then set along its south bank being still visible.

The only question tried or submitted was whether or not the twenty-five acres of land in question were accretions formed against the Luster tract. If so the judgment of the trial court was correct in awarding it to the plaintiffs; otherwise, the defendants being in possession, it was, of course, erroneous. This constitutes, as we have said, the sole issue.

The evidence shows, as set forth substantially in the respondents' statement of facts, that there were four tracts of riparian lands fronting or bordering upon the west bank of the Missouri River in the locality described in the evidence, which are more or less pertinent to this issue. These extended practically from the bluffs, eastwardly to the river, prior to the year 1900. The Nolke tract was the most northerly of these, and fronted about eighty rods upon the river; south of it lay the Luster tract, a narrow strip, which is the land owned by the plaintiffs. Adjoining this was the Will Burnett tract with thirty rods of river front at the east end. The next and most southerly of these tracts is called the E. E. Burnett tract, now owned by the defendant Heumann, which fronted east upon the river thirty rods and is the tract to which the defendant Romine claims the twenty-five acres, which lie between it and the river, accreted. This accretion lies upon the river bank east of this tract, so that should it go to the plaintiffs as a part of the

Luster tract it would cut off the E. E. Burnett tract from the river.

The evidence, as stated by respondents, tends to show that about 1903 the Missouri River ran south along the east end of these four tracts of land, constituting their eastern boundary; that at about or soon after that time accretions began to form in front of the Nolke tract, and gradually extended south along the river bank opposite the Luster tract throughout its entire frontage. This accretion extended to the front of the Will Burnett tract, and further down the river, so as to include, as respondents asserted, the twenty-five acres of accreted land now in controversy lying across the front of the E. E. Burnett tract, through the owners of which the defendant in possession now claims.

It is suggested by the respondents in their statement that there has been some arrangement by which they have become entitled to accretions to the Will Burnett tract, but they make no attempt to show any conveyance or transfer to that effect, and we will assume that it is unnecessary to give further attention to this suggestion.

Reverting now to the conduct of the Missouri River when, in its southern course, it reached and passed the mouth of Fish Creek: The evidence shows that is was there diverted to the southwest, leaving a strip of the land belonging to Will Burnett between its current and Fish Creek, which became known as Thornton Island, bounded on the west by a slough. It then swept south past the E. E. Burnett tract and out of the region of this controversy. The remainder of its history so far as it concerns this case consists of a movement back toward the east, uncovering the lands which it had in its western movement taken from the river front of the two Burnett tracts, including the accretions involved in this controversy.

Further reference to the facts will be made, if necessary, as we proceed with the opinion.

I.   The respondents expressly rest their title upon the assertion that the land in question consists of accretions to the shore lands of the tract described by them as the Luster tract acquired by their ancestor through a deed from one Luster.   The object of the suit being to obtain a judicial declaration that plaintiffs are the owners in fee of the land involved in the issue, it is at law, and triable by a jury.   This form of trial having been waived by the parties, and no objection having been made in the course of the trial by the court as to the admission or rejection of testimony, and no declaration of law having been asked or given, the case stands upon the sole question whether or not there was substantial evidence in support of the judgment of the court by which the respondent was held and declared to be the owner of the land in question.

*Appellate Practice.*

Titles of this character have no relation whatever to the ownership of the grains of sand which may be taken up and carried by the current of a stream to some other resting place upon its shore.   When they once become floaters they lose their character as land and become a part of the running stream, and only resume that character when they find a new resting place somewhere above the surface of the water, and become a part of the domain of him upon whose land they settle. Sometimes also the calls in the deeds of riparian owners and the direction of the shore lines are of such a nature that justice can only be done by an equitable division of the accretions which will be made in any case involving that question.

*Accretions.*

II.   Keeping in view the principle just stated we are reminded that by this action the plaintiff is seeking to recover a body of relicted lands uncovered by the Missouri River without any apparent interest in any of the adjoining lands, and to obliterate entirely the water front owned and enjoyed by the defendants and their predecessors in title for many years.

*Relicted Lands.*

The pretext upon which they are endeavoring to support their claim is that this particular tract of twenty-five acres accreted to and by that process became a part of the Luster tract of which they were the owners in fee. They do not claim that it adjoins that tract, and freely admit that it does not, but they do insist that it accreted to and does join other land which, in its turn, accreted to and adjoins the Luster tract. The question is whether, admitting the truth of all the evidence introduced by plaintiffs, it affords any legal support to their conclusion.

That their ancestor under whom they claim title was the owner of the Luster tract under a deed upon which they rest their title is unquestioned. The description under which they acquired and always held it is as follows: "Beginning at the southeast corner of Thomas Letty's land, thence down the channel of Fish Creek to its mouth, thence up the Missouri River to an agreed line between James S. Evans and William A. Reed— Thence in a northwesterly direction to the Slough bank— thence in a southwesterly direction to the place of beginning—containing forty (40) acres more or less, all of the above described land being in Section Thirty (30) Township fifty-one (57) Range Eighteen (18)." The boundaries contained in this description are unquestioned. No claim is made that they do not close perfectly. The southern boundary of the tract is Fish Creek which, it is admitted, was, at that time, a stream running from the point of beginning eastwardly to the Missouri River, where it debouched into that stream. This point is called, in the deed, its "mouth," from which the eastern boundary extends "up the Missouri River" to a point specifically named. The description then takes the boundary back in a northwesterly and southwesterly direction to the point of beginning. That its southern boundary was marked by a creek emptying into the Missouri River, and that its eastern boundary extended up the river necessarily on the west side, could not be more plainly expressed. It is also emblazoned upon this

deed and shown conclusively in the record of which it forms a part, and is not denied, that the land fronted eastwardly upon the Missouri River, extending *up* that stream upon which it had no other frontage, and that Fish Creek constituted its entire southern boundary. It is also made plain upon the record and not denied or otherwise explained, that at the time this suit was instituted this southern boundary was intact, with the exception that the running water had disappeared from the channel of Fish Creek, which was still plainly marked upon the ground, and that posts on the south bank of the creek with which it had evidently been enclosed were still visible at the time this suit was instituted. It would be doing violence to the record to assume that it shows or leaves room for any reasonable inference that the Luster tract had, at any time up to the time of the trial, been invaded by the Missouri River, and we are forced to the conclusion that no accretion to its river front could have taken place elsewhere than along its eastern boundary which constituted its entire river frontage. The question involved being the title to lands held solely as accretions, it is evident that the fundamental fact to be proved is the ownership of shore lands to which such accretions were made. The respondents have planted themselves upon the proposition that they were made to the tract of shore land called the Luster tract owned by their ancestor and bordering upon the west side of the river. Upon the introduction of their evidence it turns out that the accretion in question is at least a quarter of a mile below its shore land and it therefore becomes necessary in some way to connect it with the parent tract. This link in the chain of evidence must lie somewhere in the history of its formation, the facts of which are substantially unquestioned.

III. The respondents admit that the process began by the recession of the river from the front of the Nolke tract and that it continued in a southerly direction in front of the Luster tract. The river bank was thus

moved by these imperceptible processes to the east in
front of both tracts, so that their eastern
line was moved out into what had been the
Missouri River. This projection was still
north of the Will Burnett tract which intervened be-
tween the Luster land and the twenty-five acres of ac-
cretion here in question, a distance of some thirty rods.
The theory of respondents is, in so far as they have
favored us with any theory, that as the shore line of the
Luster tract moved eastwardly and occupied the land
uncovered by the recession of the river, a new front was
formed facing south, which moved across the thirty-rod
front of the Will Burnett tract and formed the twenty-
five acres in question in the space vacated by the re-
ceding river between the Heumann tract and its river
front.

*Connections With Shore.*

This theory, absurd as it may appear, was urged in
this court in Crandall v. Allen, 118 Mo. 403, in which we
said:

"We find nothing in the record that questions that
this accretion in front of plaintiff's land *formed to his
shore,* but it is assumed by defendant that if it *began to
form* on the north of his land as the river then ran until
it extended up in front of plaintiff's boundary on the
same river, it then became defendant's, by reason of the
alluvion having first made its appearance on his northern
boundary. The inevitable consequence of this claim
would be, if carried to its logical conclusion, that defend-
ant would thus become possessor of the river front not
only in front of plaintiff, but of all other riparian own-
ers."

The same language is equally applicable here, ex-
cept that in this case it is not claimed that the first point
of contact of these accretions with the shore was on the
Luster tract, but is admitted to have been on the land
of one Nolke, which would, according to the doctrine
urged, have stripped the Luster tract of its riparian
character. Instead of submitting themselves to the con-

sequences of their own theory, these respondents have enjoyed and still enjoy all the incidents applicable to the Luster land, and are now attempting to take to themselves, independently of the ownership of any land in the vicinity, the only water front pertaining to the land of the defendant Heumann.

We hold that, under the evidence of the respondents presented at the trial below, as well as in the statement and brief furnished by them to this court, the riparian character of the Luster land owned by them on the west bank of the Missouri River pertained solely to its frontage on the west shore of the river.

The judgment of the Circuit Court for Saline County is therefore reversed, and the cause remanded with directions to enter judgment upon the pleadings and evidence accordingly. *Small* and *Ragland, CC.*, concur.

PER CURIAM:—The foregoing opinion of BROWN, C., is adopted as the opinion of the court; *Woodson, P. J.*, and *Graves* and *Elder, JJ.*, concur; *James T. Blair, J.*, concurs in the result.