SERENO ARMSTRONG AND WIFE *vs.* EDWIN S. WHEELER AND OTHERS.

Whether a court of equity has power to establish boundary lines between adjoining proprietors in respect to easements in the shore, where no divisional line has ever been established :   *Quære.*

However this may be, yet courts have incidentally the power to ascertain what the true dividing lines are in such cases, for the purpose of redressing or preventing wrongs.

A mode has been adopted by some courts of dividing flats below high-water mark between upland proprietors by running a base line from corner to corner of each piece of upland, and two straight lines from the coincident corners, one at right angles to one base line and the other to the other, and establishing as the line a line that divides equally the angle thus made.  But it is a fatal objection to this rule that the line would change with the change of each proprietor's frontage on the shore by purchase or sale.

Where the upland divisional line extended would intersect the shore line at substantially right angles, the line should be so extended over the flats.

*A* took a conveyance from *B* of certain real estate, part of a larger tract, described as follows :—"All that certain parcel of land with a marine railway and other improvements thereon, situated," &c.  *B* afterwards conveyed a parcel next adjoining to *C*.  Held that *C* could not be heard to claim that the marine railway, as then constructed, was an encroachment on the part conveyed to him.

[Argued December 2d, 1884—decided January 24th, 1885.]

SUIT for the establishment of a boundary line and for an injunction; brought to the Superior Court. Facts found by a committee and case reserved for advice. The points decided by the court will be sufficiently understood without a statement of the facts.

*J. G. Clark*, with whom was *E. H. Rogers*, for the plaintiffs.

*J. S. Beach* and *C. R. Ingersoll*, for the defendants.

CARPENTER, J. The plaintiffs and defendants are the owners, in severalty, of different pieces of land lying on the easterly bank of Quinnipiac River, a navigable stream in which the tide ebbs and flows. The defendant Wheeler has constructed a wharf in front of his land below high-water mark, which wharf the plaintiffs claim is an encroachment upon their riparian rights. This action is brought against Wheeler to restrain any further encroachment.

The defendant Sarah M. Wright owns land next north of the plaintiffs' in front of which in the river is a marine railway. The plaintiffs in an amendment to their complaint allege that she and her husband, who is also made a defendant, are constructing and threatening to construct a wharf in such a manner as to encroach upon their riparian rights, and they pray for an injunction against them.

They also pray against all the defendants that the court will fix and determine the boundary lines between all the parties below high-water mark. The facts were found by a committee and the case was reserved for the advice of this court.

That a court of equity has power to determine and locate lost boundaries between adjoining proprietors will not be denied. The Superior Court has power also by statute to restore lost bounds; but this is not a proceeding under that statute.

Whether a court of equity has power to locate boundary lines between adjoining proprietors in respect to easements

in the shore, where there have never been any bounds to lose or be restored, is at least questionable. That the court has power incidentally to ascertain where such lines are for the purpose of redressing or preventing wrongs will be conceded. For that purpose alone will jurisdiction be entertained in this case.

The question then is, whether the defendants, or any of them, have encroached, or are threatening to encroach, upon the rights of the plaintiffs.

We will first consider the case against Wheeler.

The division line between the plaintiffs and Wheeler commences at Ferry street, and runs in a northwesterly direction in a straight line to a point about fifty feet easterly of the line of high water. From that point it runs several degrees more northerly and intersects the line of high water at nearly right angles. That line extended crosses the low-water line and intersects the harbor line at right angles substantially, and forms the northern boundary of Wheeler's wharf. The plaintiffs claimed on the trial in the court below that the division line between them and Wheeler in the shore should be an extension in a right line of the line as it runs from Ferry street. That would carry the line so far south as to embrace Wheeler's wharf. Wheeler claimed that the line should cross the flats at right angles to the line of high water.

The court found that if the law is as Wheeler claimed it to be, then there was no encroachment; but if the law is as the plaintiffs claim it to be, then there is an encroachment.

The ground on which the plaintiffs stood in the court below is now abandoned and they have taken another position. That being so, we have no occasion to consider whether the course of the line as it runs from Ferry street is to be extended across the flats.

Upon the authority of *Emerson* v. *Taylor*, 9 Greenl., 42, the plaintiffs' theory now is to draw a straight line from corner to corner of the plaintiffs' land on the shore, and from the corner adjoining Wheeler run a line at right angles

to that across the flats; draw a like line along the margin of Wheeler's land, and from that line at right angles start- ing from the same point run another line across the flats; then divide the space between these two lines equally between the parties.

Perhaps a sufficient answer to this claim is, that the plaintiffs advanced no such theory in the court below, so that there is no finding applicable to it. We are not told where the division line ascertained by that rule would be, and we cannot assume that the rule, if adopted, would make Wheeler a trespasser.

It may be claimed however that with a map of the prem- ises we have sufficient data for locating the line with suffi- cient certainty to determine whether Wheeler is a trespasser or not. Our answer to that is, that we have tried the experiment and the result is not favorable to the plaintiffs. It makes the line as nearly as we can judge identical with the north line of Wheeler's wharf, so that the plaintiffs would probably gain nothing by the adoption of this rule.

We would however do the counsel for the plaintiffs the justice to say that they locate the lines differently; but they have not done it by an accurate survey of the prem- ises; they take the maps as we have done. But on a map drawn to a scale of over three hundred feet to the inch, it is not strange that mistakes should occur. The Armstrong- Wheeler corner seems to be located about fifty feet back of the shore and some twenty-five feet further south than it should be. In that way a division line is obtained that gives the plaintiffs a considerable portion of Wheeler's wharf. But neither that location nor ours commands our entire confidence. We should be better satisfied to have a competent engineer locate them from actual measurement and give us a reliable result. We would suggest that it will be well for parties before urging upon our considera- tion a rule of this character, to ascertain definitely just what the result will be in the case presented. Perhaps it will be a saving of time and expense.

Although such a rule might operate justly in this case

and in many others, yet there is one fatal objection to its adoption; the dividing line would fluctuate as changes were made in the direction of the base lines; and those lines would be likely to change if the parties should add to or take from their riparian lands by purchase or sale. A rule so unstable in its results cannot be regarded with favor.

As between the plaintiffs and Wheeler the rule adopted in *New Haven Steamboat Co.* v. *Sargent,* 50 Conn., 199, may well be applied. In that case the extension of the upland lines would intersect the lines of high and low water at nearly right angles, and they were so extended. Applying the same rule here, and extending the line as it runs for fifty feet before it reaches the shore, it will be seen that the line is coincident with the north line of Wheeler's wharf. That being at right angles to the shore, or, nearly so, it is expressly found that the wharf is not an encroachment.

The plaintiffs of course contend that the rule found in *Emerson* v. *Taylor, supra,* should be applied in dividing the flats between them and Mrs. Wright. But for reasons already given we must reject that rule.

In behalf of Mrs. Wright it is contended that the upland line should be extended across the flats. That would give to her a large portion of the flats in front of the plaintiffs' land; and in that event she has not encroached upon the plaintiffs' riparian rights, and does not contemplate doing so. The marine railway also is not an encroachment. But if the flats are to be divided by a line at right angles to the shore, then the marine railway extends over the line. It is not claimed that there is any other encroachment.

The main argument in favor of extending the upland lines is that the parties have practically made that division. In 1865 Sereno Armstrong owned all the land now owned by both parties, and about that time he built the marine railway at a cost of about $10,000. Prior to April 17th, 1878, William O. Armstrong became the owner of all the land. On that day he deeded to Mrs. Wright the land now owned by her, and then deeded to Mrs. Armstrong the land now owned by her. In the deed to Mrs. Wright the prem

ises are described as "all that certain piece or parcel of land, with all the buildings, wharves, marine railway, and other improvements thereon, situated, &c." In connection with this it is found that the railway was necessarily built where it was, and that "in order to use said railway to advantage it is necessary to have dolphins about thirty-five feet each way from the center of the west end of the railway track. These dolphins are spiles driven into the river bottom, and are used in hauling vessels upon the railway. Such dolphins were placed there when the railway was built, and have been maintained there ever since."

In the deed to Mrs. Wright her southern boundary is described as "a straight line commencing at a point on the west line of Ferry street, where said westerly line is intersected by the southerly line of land recently conveyed to me by Sereno and Selina Armstrong, to the westerly end thereof, and thence westerly in the same straight line to the Quinnipiac river." In the deed to Mrs. Armstrong her northerly line, which is the same as that above described, is described in the same language.

The deed from Sereno and Selina Armstrong to William O. Armstrong is not before us. If the land thereby conveyed does not extend to the shore, then the words, "to the westerly end thereof," define a point east of high-water line, and the remaining description, "thence westerly in the same straight line to the Quinnipiac river," may well terminate at high-water mark. In that event the deeds do not divide the flats. If on the other hand the land so conveyed extends to the shore, then the concluding words in the description must, if they have any force at all, be held to divide the shore. If necessary therefore this case would be remanded for a further finding of facts.

But we think the case may be disposed of without such finding upon another ground. The marine railway is a substantial structure erected at a large expense. It is expressly named in the deed, so that the intention of the grantor that Mrs. Wright should have it, its appurtenances, and all that is necessary to its successful operation, free

from any interference or claim from the plaintiffs in respect to them, is clear. And the plaintiffs taking their deed subsequently from the same grantor may well be estopped from making any such claim.

We advise judgment for all the defendants.

In this opinion the other judges concurred.