## No. 12,365.

### J. D. S. NEWELL VS. B. S. LEATHERS ET AL.

Jurisdiction sustained—right of possession of certain premises being at issue, with oath of plaintiff that this right is worth more than two thousand dollars, and that he would be damaged exceeding that sum if defendant is not restrained from invading same.

Proportionate area or acreage system for division of alluvion between adjoining riparian proprietors excluded.

Each proprietor of original tracts takes between the lines of his new frontage on the water-course measured back to the old frontage.

Course or direction of side lines of no consequence. Extent of old frontage on the water-course determines extent of the new frontage on the water-course.

APPEAL from the Twenty-third Judicial District Court for the Parish of Tensas. *Dagg, J.*, Eighth Judicial District, in place of *Tullis, J.* recused.

---

*Wade R. Young* for Plaintiff, Appellant.

---

*Elam & Dale* for Defendants, Appellees.

---

Argued and submitted January 21, 1897.

Opinion dismissing appeal handed down March 1, 1897.

Rehearing granted March 10, 1897.

Argued and submitted on rehearing June 4, 1897.

Opinion handed down December 28, 1897.

Second application for rehearing refused February 21, 1898.

## ON REHEARING.

The opinion of the court was delivered by

BLANCHARD, J. While there are allegations of *actual* possession by both parties, judging the character of the action by the whole pleadings, it does not appear to be solely a possessory action having for its object, on part of plaintiff, to be maintained in the possession of certain premises, or, on part of defendant, to be quieted in the possession of the premises he describes.

The *right of possession* in virtue of certain contracts of lease and purchases, is also put at issue.

Plaintiff claims the right of possession of the entire alluvion in front of the town of St. Joseph from the edge of the pond, in front of the public levee, to the present margin of the Mississippi river.

He avers this right to be worth more than two thousand dollars, and that he would be damaged in an amount exceeding that sum if his right of possession is not vindicated.

Defendant, in turn, asserts his own right of possession of part of the premises in dispute, and prays that this right be recognized and enforced.

The Mississippi river once ran along the immediate front of the town of St. Joseph. Gradually the condition changed. The river slowly receded until now the water line is more than a half mile from the town. In front of above and below the town an extensive alluvion or *batture* has formed. Possessing under certain leases and other contracts, plaintiff established, some years ago, a public landing and warehouse on this batture. This is the landing that steamboats, transporting merchandise and other commodities and passengers to and from St. Joseph, use. Heretofore it has been a monopoly in the hands of the plaintiff, who has derived and still derives large revenues from it.

Defendant Leathers, who owns and navigates boats upon the river, seeking to establish a landing for his boats in front of the town, acquired by purchase and lease certain rights in, to and on the batture. He begun the work of constructing his landing by driving some piles along what he claimed as his portion of the river front. Whereupon plaintiff instituted this suit and caused writs of injunction to issue prohibiting the work.

It will be thus seen that the real contention between the parties is

a landing for boats. Plaintiff seeks to preserve in himself the exclusive right of maintaining a public landing on the batture in front of the town. Defendant resists this exclusive privilege, and attempts to establish another landing along the river front.

It thus appears that there is nothing in dispute in this controversy except the right of defendant to establish a public landing on the land described in his answer, and plaintiff attests under oath that if defendant is allowed this right, his (plaintiff's) public landing will be rendered comparatively worthless, and he will be damaged exceeding the sum of two thousand dollars.

In this view of the case, this court has jurisdiction. 30 An. 798; 31 An. 205; 46 An. 645; 47 An. 863.

The question presented on the merits is simple.

Was the alleged trespass committed on premises held under lease by plaintiff? On whose front line were the two piles driven by defendant?

If on that of the premises acquired by defendant by purchase from R. H. Snyder, or by lease from Mrs. Carrie M. Davidson, then, obviously, plaintiff's case must fail, for it is not pretended that he had the possession, or right of possession of such premises.

Plaintiff's contention is that that part of the river front of the batture where the piles were driven is covered by the lease which was executed to him by Mrs. Jennie Levy, and that the Snyder and Davidson tracts held by defendant have no frontage on the river.

Defendant contends that the Snyder, Davidson and Levy tracts of batture all front on the river, and that the three together give a continuous frontage of about four hundred feet. These tracts lie between St. Joseph and the river. It is further contended by defendant that the piles were driven by him either on the Snyder or Davidson tract.

The town of St. Joseph is situated between the Panola plantation on the upper side and the Duck Pond plantation on the lower side.

Plaintiff's public landing and warehouse is located on the river about opposite the middle front of the town, and about midway between the lower boundary line on the batture of Panola and the upper boundary line on the batture of Duck Pond.

The batture tract on which this landing is was leased by plaintiff from the parish of Tensas. Then next above lie tracts or lots of

batture fronting on the river owned by Moore, Young and the Farrar estate. Then comes the Jennie Levy tract.

Plaintiff claims the possession or control of all of these tracts under his contracts.

Next above the Levy tract is the Davidson tract or lot, and then the Snyder tract—both claimed by defendant.

This brings us to the Panola line.

These several tracts of alluvion were accretions enuring as riparian rights to the owners of the soil along the original front of the town of St. Joseph.

The United States survey was made in 1828. At that time the river line, or front of the tract of land upon which St. Joseph was afterward located, was the same length substantially—about thirty chains —as is the new river line of the batture in front of the town at the present time. Thus we have, practically, the same new river front for each riparian proprietor as the old river front gave, and, therefore, by *lineal division* each proprietor will have the same measure of front on the new line as he had on the old.

To adjust the contentions of the several riparian proprietors in this way accords with the rule laid down by the law for the measurement and division of alluvion.

The language of C. C. 516 is free from ambiguity: "If an alluvion be formed *in front* of the property of several riparian proprietors, the division is to be made according *to the extent of the front line of each* at the time of the formation of the alluvion." (Italics ours.)

The course, or bearing, or direction of the side lines of the tracts or lots of land in front of which alluvion is formed, is, therefore, of no consequence in the division of the batture formed subsequent to the acquisition of the tracts.

What *is* of consequence is the extent of the *old* frontage of the tracts on the water-course, and from this is to be determined *the extent of the new frontage* on the water-course.

This excludes the idea of a proportionate area or acreage system of division between the several tracts fronting on the alluvion to be divided. Each proprietor of the original tracts takes the quantity of alluvion that may be between the lines of his old frontage on the water-course measured forward to the new frontage. The lines by which the new frontage is reached may be parallel, or convergent, or divergent, according as the extent of the newly formed water line

may be the same in the one case, or less in the other, or greater in the third, than the ancient water line of the tracts. Duranton, Vol. 4, No. 421; Fuzier-Herman, Code Annotés, Vol. 1, p. 749, Nos. 49, 50; Baudry-Lacantinerie, Préces Droit Civil, 3d Ed., p. 773; Deerfield vs. Arms, 17 Pick. (Mass.) 41; Batchelder vs. Keniston, 51 N. H. 496; Jones vs. Johnson, 18 How. 150; Johnson vs. Jones, 1 Black (U. S.) 209; Kehr vs. Snyder, 114 Ill. 313; Armstrong vs. Wheeler, 52 Conn. 428; Crandell vs. Allen, 118 Mo. 403; Gray vs. Deluce, 5 Cush. 9, 12, 13; Porter vs. Sullivan, 7 Gray, 443; Muller vs. Hepburn, 8 Bush (Ky.), 326; Gould on Waters, Secs. 162, 163 (2d Ed.); Am. and Eng. Ency. of Law, p. 477 (2d Ed.).

"This mode of distribution," said the court in Deerfield vs. Arms, *supra*, "secures to each riparian proprietor the benefit of continuing to hold to the river shore, whatever changes may take place in the condition of the river by accretion, and the rule is obviously founded in that principle of equity upon which the distribution ought to be made."

We do not interpret Delord vs. City, 11 An. 699, cited adversely, as establishing a different rule.

R. H. Snyder owned lots or tracts of land in the town of St. Joseph, fronting on the old river line. Alluvion formed along this front; and in 1865 Snyder sold to Jas. Friendship a lot on the east or river side of the levee in front of his town property. This lot was of small dimensions, some sixty feet wide by a depth of one hundred and forty-three feet toward the river, but far from reaching the river.

On the north or upper side it bordered lands of the Panola plantation on the river side of the levee. The sale left in Snyder still a batture frontage on the old river line, as well as the tract of batture between the lot sold to Friendship and the river. Then in 1872 he sold to Bernard Levy a lot or piece of land commencing at the southwest corner of the lot sold to Friendship, thence running in an easterly direction along the southern line of Friendship's lot to its extreme eastern boundary, thence on to the margin of the river at low water, thence down the margin of the river to the northern boundary of batture lands owned by the Misses Murdock, thence westerly along the Murdock line to the levee, thence up the levee to the place of beginning.

By the sales to Friendship and Levy, Snyder may have disposed

of all the batture he owned lying opposite and immediately in front of his original St. Joseph lots, but he still had left the piece of batture on the east or river side of the Friendship lot. This, as we understand it, he sold in March, 1895 to the defendant Leathers, less, perhaps, parts of it previously sold to Beaumont and Woods. In the act of sale to Leathers this ground is described as bounded on the east by the river, and on the south or lower side by batture lands of Mrs. Carrie M. Davidson.

This leads to the tracing of the Davidson acquisition.

Bernard Levy, who bought from Snyder, having died, his widow, Mrs. Jennie Levy came into possession of his estate. She added to her holdings of batture land in front of St. Joseph by purchasing a tract from A. F. Brown. Then, in 1888, she sold to R. S. Emerson a part of what she owned. The description is that certain lot or piece of ground bounded on the north by a line beginning at the southwest corner of the Friendship lot and running in an easterly direction " parallel to said line " (what line?) to the river; on the east by the river, on the south by a line commencing at a point mentioned on the public levee and *running east, southeast to the river*, and west by the levee. It is stated in the deed that the property sold has a frontage on the levee of about sixty-eight feet. What its river line is is not stated, but it is distinctly described as bordering on the river.

Emerson, who bought from Mrs. Levy, died, and Mrs. Susan A. Brown was recognized as his sole heir at law.

She sold the tract just described to Jos. Moore in 1890. Moore donated it to his daughter, Mrs. Carrie M. Davidson, and she, on August 3, 1895, leased it to defendant Leathers, for a term of five years. A few days before she leased to defendant, to-wit: on July 29, 1895, she secured from Mrs. Jennie Levy a corrected description of the tract, In this conveyance it is set out that the description in the former deed to R. S. Emerson, executed in 1888, is erroneous and ambiguous, in this: that three directions or courses are given, each inconsistent with the other. Mrs. Levy, therefore, in order to correct same, declares it to have been her intention when she sold to Emerson to fix and define the south line of the tract as alone starting on the public levee at the point mentioned in the first conveyance and running to the river in a direction parallel with the line between the lands of the vendor and Robert Murdock outside the public levee.

These several tracts of alluvion being adjuncts of the original hold-ings on the ancient line of the river were entitled to go to the new river line for frontage, and to have there the same frontage that the original tracts or lots had on the ancient line, for, as we have seen, the river frontage of the two lines are practically equal.

The vendors of these several tracts of alluvion intended to convey and did expressly convey to the river margin, and this intention, purpose and object can not be defeated by running the lines on courses that would render impossible a frontage on the river. A river front was what the vendees stipulated for; it was the object they had in view in thus acquiring property valueless, or nearly so, without such frontage.

To sustain the contention of plaintiff as to these lines would run the lines of the Snyder and Davidson tracts, and part of the Levy tract, on to the batture in front of the Panola plantation and thus defeat entirely a river frontage for the first two tracts.

So, too, to sustain plaintiff's contention that the alluvion must be divided by the area or acreage rule of distribution would run the lines of the tracts mentioned on to the batture that must be held as appertaining to the Panola plantation. To take from the Panola batture to make up acreage quantity for lots fronting on the ancient line of the river below the Panola southern boundary would lead to an absurdity. Such a rule of measurement and division, if carried out, would defeat a frontage on the river, not only for the Snyder and Davidson tracts, but for the Panola plantation as well, though the latter had a front of miles on the ancient river line, and there is the same length of new river line in front of the plantation. St. Louis vs. Rutz, 138 U. S. 226.

The last survey made of this alluvion, by order of the lower court, showed the piles driven by defendant to be on the front of the tract he had acquired from Snyder. Plaintiff does not hold this tract under lease or other contract. The evidence discloses he endeavored to purchase the tract from Snyder just prior to its acquisition by defendant. He must have then believed the tract had a river frontage, or else he would not have desired it. He had no use for it except that it fronted on the river, and was necessary to enable him to maintain his monopoly of the public landing.

So, too, in 1895 he offered to lease the batture tract of Mrs. Carrie M. Davidson. This was after the present suit was filed. What use

did he have for this tract except that he feared it bordered on the river, and was necessary to him in sustaining his exclusive right to a public landing on the town front?

The rule adopted by the surveyor for his measurement and division, which he says he obtained from Hodgman's Work on Surveying is the one long recognized by the law, and precisely laid down in Deerfield vs. Arms, 17 Pick. 41.

As defendant was proceeding to erect a public landing on his own premises, it follows that plaintiff has no case.

It is not necessary to decide other questions of law raised by the pleadings.

Certain questions of practice are raised and insisted on by plaintiff's counsel in argument.

One is a motion to quash the jury venire made by plaintiff, and the other is the refusal of the court to continue the case on application of plaintiff.

His counsel excepted to the rulings of the court and reserved bills of exception.

With regard to the refusal to continue the case, we can not say the trial judge erred. The case had already been several times continued, and much delay had ensued.

When the last motion to continue was overruled the case had them been on the docket about fifteen months—a long time for an injunction suit to remain untried in the court of the first instance.

The granting or refusal of motions to continue rest largely in the sound discretion of the court below and its ruling in regard thereto will not be disturbed unless clearly erroneous. In the last application for continuance defendant agreed to admit that the plaintiff, who was the witness absent because of illness, would testify to the statements set forth if present, and thus the evidence was gotten into the record.

With regard to the motion to quash the venire, it suffices to say we do not think the grounds urged sufficient. Besides, the plaintiff, after having prayed for a jury, waived trial by jury and submitted the case to the court.

For the reasons herein assigned it is ordered that the former decree of this court, dismissing the appeal for want of jurisdiction is set aside, and that the judgment appealed from be affirmed with costs.

NICHOLLS, C. J., takes no part in this decision, because of absence when the case was argued.