HARDY, Judge.
This suit was instituted by plaintiffs seeking a declaratory judgment establishing their rights to an alluvion formation known .as Esperance Point, located in Concordia Parish. From a judgment fixing a line of ■division and boundary of the alluvial de■posit as between parties plaintiffs and defendants, plaintiffs have appealed.
This opinion falls somewhat naturally in•to four divisions; first, a statement of the relief sought by the parties and the established facts bearing thereupon; second, a ■ consideration of the judgment of the trial court and its supporting reasons; third, a ■ discussion of the law and jurisprudence applicable to the issues presented; and, fourth, an enunciation of our conclusions.
Before entering into a development of this opinion, we observe that the record •made up on trial is most unsatisfactory, and were it not for the intelligent and able presentation made by learned counsel for .all parties litigant, in briefs and oral arguments before this court, we question whether the record alone could be accepted as a basis for our conclusions and judgment.
The prayer of plaintiffs’ petition seeks judgment
“ — declaring the rights of plaintiffs— in and to the alluvion known as Esperance Point and, particularly — judgment declaring that plaintiffs — are the owners of that proportion of the entire acreage in the alluvion formed- — known as Esperance Point as the length of the front line of the property owned by them which joins the alluvion— bears to the length of the front line of all property that joins the alluvion.”
Defendants, after praying for the rejection of plaintiffs’ demands, further prayed:
“ — that this Honorable Court appoint a surveyor to fix the limits between the properties claimed by the Plaintiffs and those claimed by Respondents; that such division be limited to the accretion or alluvion deposited in front of the property of the several riparian proprietors ; and that all alluvion deposited in front of the property of Respondents before alluvion was deposited in front of the Plaintiffs’ property be excluded from that division; that only the allu-vion be divided; that the boundary be so established as to allot to Respondents all of the land possessed by Respondents and especially all of the land lying to the east of the western boundary of the lands subleased by Sinclair Oil & Gas Company to Plunter Jones; and that the division be made by proportioning the front line after the formation of the alluvion to the former front line of the riparian owners.”
This court is under the impression that the specifications of relief as prayed by both plaintiffs and defendants have been somewhat modified, and it is our understanding that the declaratory judgment rendered herein shall be confined to a determination of the method to be followed in effecting the apportionment of the alluvial area be *336 tween plaintiffs and defendants. In other words, it is the conception of this court that the parties desire the establishment of a rule or formula for apportionment. If we are correct in this conclusion, it follows that the responsive judgment in this case will form a basis either for an action to fix boundary or, as is devoutly hoped, a basis for an amicable agreement between the parties, leading to a survey predicated upon the rule established by final judgment in this case.
For the purpose of reference we have caused a plat of the properties involved to be made, which plat is reproduced below:

*337 A word of caution is appropriate with reference to a consideration of the above plat, which is intended to be simply illustrative in nature and effect. We do not intend that the lines or measurements shown thereon shall be considered as accurate and exact, inasmuch as a number of these elements are not definitely established by the record.
We now proceed to a recital of the material facts. The plaintiffs are the owners and the mineral lessee of the property in Sections 10 and 13 of Township 5 North, Range 9 East, of Concordia Parish, located north and east of the line A-B. Defendants are the owners and mineral lessee of the property located in Sections 5, 6, 7 and 8 of Township 5 North, Range 10 East, and Sections 5, 6, 7, 8 and 9 in Township 5 North, Range 9 East, of Concordia Parish, lying north of the line B-C. The line AB-C concededly represents the high bank along the onetime course of the Mississippi River and is accepted as representing the proportionate riparian frontage of the respective parties which has a direct bearing upon their rights to the alluvial formation, which latter is comprised of an extensive area lying west and south of the line A-BC, the perimeter of which area is represented by the outermost extent of the line A-C.
Sometime in the century or more past, the Mississippi River flowed and channeled along the lines of the properties owned by the parties to this litigation, and in such course considerably encroached upon said lands. Following its destructive action by erosion and avulsion, Old Man River repented, and began, about or near the turn of the present century, to restore, by the slow process of accretion, that which he had taken by force and violence. The process of accretion was substantially enhanced and expedited by the construction of what is known as Glasscock 'Cut-Off, located at a point south of the alluvial formation, by the work of the United States Corps of Engineers in the year 1933. This work changed the course of the river to the north and east of the properties involved in this action, leaving the former course to the west and south, known as Deer Park Bend, as a sort of lake or inactive cut-off.
The record contains numerous survey plats, hydrographic charts, etc., but there appears to be no substantial dispute between the parties as to the extent and area of the alluvial deposit. The record does not establish, nor do we believe any man can say with certainty, the time of the beginning of the formation of this alluvial deposit. Five hydrographic charts prepared by the United States Corps of Engineers were introduced as exhibits on behalf of defendants. These charts purport to represent the extent of the alluvial formations which existed at the time they were prepared in the years 1909, 1929-30, 1933, 1937 and 1941, respectively.
The distinguished judge of the district court, in an opinion which reflects studious and meticulous consideration of the law and facts, effected the establishment of a line of boundary, indicated as B-E'-E" and rendered judgment allotting to plaintiffs the ownership of the alluvial deposits lying north and west of his established line, and to the defendants the ownership of the alluvion lying east and south thereof. The careful computation of this line, as made by .the district judge, was based upon calculations of the proportionate river frontages of the plaintiffs and defendants as applied to what he concluded was the extent of the alluvial formations evidenced by the Mississippi River Commission surveys in the years 1909, 1929-30, 1933, 1937 and 1941. The trial judge arrived at this process of apportionment on the basis of each of the periodic surveys, under his interpretation of Article 516 of the LSA-Civil Code, which he stated as follows:
“Now according to the codal article, the division is to be made according to the extent of the front of each at the time of the formation of the allu-vion, in other words, each time the river falls leaving an accretion, a divi *338 sion should be made by allotting' to each tract its share of the new frontage.”
With reference to the opinion and judgment appealed from, we observe, first, as above noted, we do not feel that we should attempt to fix any line of boundary; and, second, we are not in accord, for reasons hereinafter set forth, with the procedure of apportionment as reflected by the above quotation.
Proceeding to a development of the law and the jurisprudence which we feel to be applicable to the issues presented, there is no dispute as to the definition of alluvion and the apportionment thereof between riparian proprietors which are specifically set forth in our Civil Code as follows:
“509. Alluvion by accretion defined — Ownership. — The accretions, which are formed successively and imperceptibly to any soil situated on the shore of a river or other stream, are called alluvion.
“The alluvion belongs to the owner of the soil situated on the edge of the water, whether it be a river or stream, and whether the same be navigable or not, who is bound to leave public that portion of the bank which is required by law for the public use.”
* * * *
“516. Alluvion — Apportionment among riparian owners. — If an alluvi-on be formed in front of the property of several riparian proprietors, the division is to be made according to the extent of the front line of each at the time of the formation of the alluvion.”
The codal article with respect to the apportionment of alluvial formations has been several times considered by our Supreme Court, in the following cases, which have been cited and ably discussed by counsel for the parties: Heirs of Delord v. City of New Orleans, 1856, 11 La.Ann. 699; Newell v. Leathers, 1898, 50 La.Ann. 162, 23 So. 243; Akard v. City of Shreveport, 1941, 196 La. 714, 200 So. 14; Harper v. Learned, 1942, 199 La. 398, 6 So.2d 326.
Plaintiffs-appellants urge error as to the judgment below fixing the apportionment of the alluvion and insists that the apportionment should be made upon the entire acreage of the alluvial deposit in the proportion borne by the linear measurement of the property line of plaintiffs to the length of the entire property line adjoining the allu-vion. To the contrary, it is zealously contended on behalf of defendants that the subdivision on the basis of former or original frontage, as fixed by the judgment appealed from, is correct and should be affirmed.
We regret that our conclusions do not completely accord with either of the above claims.
We think some misconceptions with respect to the problem of apportionment may be due to an inexact appreciation of the language used in LSA-C.C. Article 516. It must be admitted that the language of the Article is not entirely clear. Both the district judge and counsel for defendants interpret the article as providing that the division or apportionment is to be made as of the time of the formation of the allu-vion. If this construction should be correct, then it follows that the method of apportionment followed by the trial judge upon the basis of the five successive surveys of alluvial deposits, would have some merit. However, as we appreciate the text of the article, the phrase — “ * * * at the time of the formation of the alluvion.”— relates not to the apportionment hut rather to the existence and extent of the front lines of the properties of riparian owners.
We think our construction is justified not only by the interpretation of the language itself but by further and more concrete considerations. Illustrating on the basis of the facts of the instant case, while it is quite true that the five hydro-graphic surveys made at different periods of time show substantial increases in the *339 area-and extent of the alluvial formations, it is not true that these surveys accurately reflect the periods at which the alluvial formations and the successive stages thereof became perceptible and susceptible of division. It could not be contended and, indeed, has not been, that the survey of 1909, for example, accurately fixed the extent of the alluvial deposit “at the time of the formation” thereof. Unquestionably, the time of formation, or, certainly, the beginning of and addition to the formation of the deposit must have occurred in natural course many years before the making of the survey. We think, therefore, it logically follows that surveys in themselves are not sufficient to establish the time of formation of the alluvion, and we doubt if, except in most unusual cases, the time of formation could be definitely established.
It is our opinion that courts must and should accept the extent and area of an alluvial deposit as it exists, be it much or little, at the time the apportionment between riparian owners is sought. To decide otherwise would have the impracticable effect of holding- that alluvial deposits must be apportioned, foot by foot, as they are formed. The periods between the surveys vary from three to twenty years, and there is no showing that the deposits formed by the imperceptible fluctuations in the opposed processes of accretion and dere-lection remained consistent during any of these intervals. We are convinced that the issue of apportionment which is tendered for our determination presents as the subject of such apportionment the entire alluvial deposit as it existed at the time this action was instituted' without respect to the time element of formation, grain by grain, foot by foot and acre by acre.
There remains, then, the resolution of the rule upon which the apportionment should be based. LSA-Civil Code, Article S16 provides that the division is to be made according to the extent of the front line of each of the riparian proprietors. This can only be interpreted to mean an allocation of frontage of the alluvion in proportions equivalent to the proportions that the original river frontage of each of the riparian proprietors bore to the whole of such frontage adjacent to the alluvial area. In other words, the proportion of the length of the line A-B, which is accepted as the original river frontage of the property of plaintiffs, to the length of the line A-BC, should be preserved in determining the extent of plaintiffs’ frontage along the perimeter of an alluvial deposit represented by the line A-C.
Proceeding to a consideration of the authorities which have been cited supra, we eliminate the case of Harper v. Learned,, which was cited by counsel for plaintiffs, only with respect to an obiter expression therein as to a conflict in our jurisprudence.. Nor do we think the Akard case has any-bearing upon the question under examination. Influenced by a painstaking discussion in brief of counsel for defendants with respect to the testimony of the City Engineer, Mr. H. E. Barnes, to which reference was made in the opinion of the Supreme Court, we have examined the original record of this suit on file in the archives of the Clerk of the First Judicial District. Court. We find, as was stated in counsel’s brief, that the testimony of this witness was obviously misunderstood by the author of the Supreme Court’s opinion.. The transcript of evidence conclusively establishes the fact that the computation made-by the witness named was based upon percentage of frontage and not upon the acreage area.
We must confess that our close examination and study of the opinions of the Supreme Court in the Delord and Newell' cases leads us to the conclusion that the holdings in said cases are in conflict, and this despite the expression in the opinion of the court in the latter case that it did not interpret the Delord opinion as establishing a different rule. The opinion of the court in the Delord case specifically declared that the line of division
*340 “ * * * must be drawn in such manner as that each of the contiguous riparian proprietors shall have such a proportion of the alluvial soil as the total extent of his front line bears to the total quantity of the alluvial soil to be divided.”
In the Newell case the opinion of the court just as explicitly declared that the method of frontage apportionment
“ * * * excludes the idea of a proportionate area or acreage system of division between the several tracts fronting on the alluvion to be divided.” [50 La.Ann. 162, 23 So. 246]
Whether the apparent conflict is real or fancied, we consider it to be of little moment, inasmuch as we feel that the method of apportionment which was effected in the Newell case is completely sound and constitutes a well-reasoned and authoritative pronouncement. In the opinion the court declared :
“Each proprietor of the original tracts takes the quantity of alluvion that may be between the lines of his whole frontage on the water course, measured forward to the new frontage. The lines by which the new frontage is reached may be parallel, or convergent or divergent, according as the extent of the newly-formed water line may be the same in the one case, or less in the other, or greater in the third, than the ancient water lines of the tracts.”
Among the authorities cited, and one to which particular reference was made in the opinion, was the early Massachusetts case of Inhabitants of Deerfield v. Arms, 1835, 17 Pick. 41. We are indebted to counsel for plaintiffs for furnishing- us with photostatic copy of the opinion in the Deerfield case. It is interesting to note that the conclusion of the court appears to have been substantially influenced by a rule of apportionment enunciated in a work on the civil law published in France in 1783, and entitled “A Collection of New Decisions”, by Denisart. The rule was found in a discussion under the title “Atterissement.” We quote from the opinion of the Deer-field case as follows:
“The rule is, 1. To measure the whole extent of the ancient bank or line of the river, and compute how many rods, yards or feet, each riparian proprietor owned on the river line. 2. The next step is, supposing the former line, for instance, to amount to 200 rods, to divide the newly formed bank or river line into 200 equal parts, and appropriate to each proprietor as many portions of this new river line, as he owned rods on the old. Then, to complete the division, lines are to be drawn from the points at which the proprietors respectively bounded on the old, to the points thus determined as the points of division of the newly formed shore. The new lines, thus formed, it is obvious, will be either parallel, or divergent, or convergent, according as the new shore line of the river equals, or exceeds, or falls short of the old.”
The above is the rule which was adopted and clearly expressed by our Supreme Court in the Newell case, and we think it is a rule based upon such logic, reason and precedent as entitles it to be considered controlling of the conclusion in the case at bar.
Even at the risk of enlarging upon an already overly long opinion, we think it desirable to make some reference to the clearly expressed reason for the rule pronounced by the French author, Denisart, accepted by the Massachusetts court in the Deerfield case and enunciated by the Supreme Court of Louisiana in the Newell case. Article 516 of the Civil Code of 1870 is identical with Article 508 of the Civil Code of 1825. There can be no possible disagreement with the conclusion that the primary purpose of the incorporation of this article in the Code of 1825 was intended to preserve and secure to riparian *341 proprietors a river frontage on alluvial deposits commensurate with and proportionately equivalent to the original front lines of their properties. Access to navigable rivers and streams was unquestionably a matter of prime importance, and it is not inconceivable that such access provided by riparian frontages was an element of value superior to extended acreage. Despite the fact that this reason no longer exists, we cannot conceive of any sound basis for the substitution of another rule of apportionment, unless and until the provisions of the codal article shall be changed or modified.
Finally, we approach the establishment, of the basis for apportionment which, in our opinion, should be observed in the instant case. Reference to the plat above delineated discloses that the original frontage of plaintiffs, extending from point A to point B, amounts to 6,700 feet, while that of defendants, from point B to point C, comprised 13,870.5 feet. The percentage proportion of plaintiffs should therefore be fixed at 32.5% of the whole and that of the defendants at 67.5%. It follows that plaintiffs would be entitled to a frontage on the alluvial area beginning at point A and extending a distance equal to approximately 32.5% of the entire length thereof, from which point a line drawn to Point B would constitute the line of division of boundary, and plaintiffs would be entitled to the entire area of the alluvial deposit west of such line, whereas defendants would be -entitled to ownership of the area extending east thereof.
For purposes of illustration on the plat above shown, we have designated the line of division extending from point X, located on the perimeter of the alluvial deposit, to point B.
We feel that we cannot be too insistent in calling attention to the fact that the above measurements are approximate, not exact, and are intended only to illustrate the basis of our conclusion. We think it reasonable to assume that the extent of the alluvial deposit has been substantially increased since the year 1941, which was the date of the last survey used in the computations of the district judge. It follows that any survey made in accordance with our decree, hereinafter set forth, should establish, with certainty, the exact bounds of the alluvial deposit as they may be found and fixed at the time of making said survey.
While we have concluded that the line AB-C is accepted as the original property line of the parties, we do not find that the record conclusively establishes the accuracy of the lineal measurements of such line. Accordingly, the determination of the two lineal frontages of the respective parties, and the lineal measurement of the perimeter of the alluvial deposit, must be fixed by surveys made in subsequent judicial proceedings or by agreement between the parties involved.
For the reasons assigned the judgment appealed from is set aside, annulled and reversed, and
It is now ordered, adjudged and decreed that, upon the basis of future surveys or agreements between the parties, the proportionate percentage which the lineal measurement of the line A-B bears to the lineal measurement of the line A-B-C shall be fixed; that an equal percentage of the lineal frontage of the perimeter of the alluvial deposit, as it exists at the time of such survey or agreement, shall be measured from point A; that a line shall then be drawn from the terminus of such measurement to point B; that following the establishment of this line the plaintiffs, Alice B. Fowler, Annie Barker Thacher, Laura B. Foules, Volney L. Barker, Forrest M. Fowler, Or-rick B. Fowler, Judson P. Barker, Ethel B. Barker, Volney J. Fowler, Vernon G. Barker, Thomas Dix Barker, Camille B. Lyon, shall be recognized as the owners of the full extent and area of the alluvial deposit west of said line, and the defendants, Angeline E. Hogue, Evelyn Hogue Retch-ings, Marjorie Elizabeth Hogue Hodges and J. W. Hogue, shall be recognized as the *342 owners of the full extent and area of the alluvial deposit east of said lines.
It is further ordered, adjudged and decreed that the mineral rights of the plaintiff, Hunter Jones, and of the defendant, Sinclair Oil & Gas Company, their successors or assigns, to which they are entitled as lessees of the above named parties, shall be recognized in and to the respective alluvial areas as apportioned in accordance with this judgment.
It is further ordered that the costs of both courts be, and they are hereby assessed in proportions of one-third against the parties plaintiff, and two-thirds against the parties defendant.