## Heirs of Delord *v.* City of New Orleans.

The course of the side lines of property, in front of which alluvion is formed, is of no consequence in the division of the alluvion formed subsequently to the conveyance or grant. The line of such division must be drawn in such manner, as that each of the contiguous riparian proprietors shall have such proportion of the alluvial soil as the total extent of his front line bears to the total quantity of the alluvial soil to be divided.  C. C. 508.

The mere omission to figure on the plan of the Delord estate the alluvion that may have existed in front of it, and to divide it among the heirs, cannot be construed into an abandonment of the ownership in favor of the public.

Decision in *Kennedy* v. *Municipality No 2*, 10th A; *Remy* v. *The City;* and *Heirs of Gainnié* v. *The Same*, 11th A. affirmed.

APPEAL from the Sixth District Court of New Orleans, *Cotton*, J.
    *Janin & Griffon*, for plaintiffs. *Livingston*, for defendants and appellants.

BUCHANAN, J.   The plaintiffs, heirs of *Madame Delord Sarpy*, claim in right of their ancestor a portion of the alluvion or batture in front of the faubourg Delord, from the defendants who are in possession of the same.   The defence turns upon three points:

1st.   That the division line of the alluvion in front of the faubourg St. Mary and Delord should be a prolongation of the line of division of those faubourgs; which mode of running the line, would exclude the land in contest from the share of the *Heirs of Delord* in said alluvion.

2d.   Dedication of the property to public use by the *Heirs of Delord*.

3d.   Prescription.

I.   The mode of dividing the alluvial deposit on the banks of the river of Louisiana between contiguous proprietors, whose titles call for a front on the river, is clearly and concisely *prescribed* in Article 508 of the Civil Code: "If an alluvion be formed in front of the property of several riparian proprietors, the division is to be made according to the extent of the front line of each, at the time of the formation of the alluvion."   The judgment of the District Court has followed this plain rule of law in awarding the land in contestation to the plaintiffs.   A prolongation of the division line of the faubourgs would cross the batture in front of them obliquely up the river, and in course of time would exclude the plaintiffs from the river altogether.   This mode of division of the batture is contrary to the spirit as well as to the letter of the law.   The title by accretion, or right of accession in relation to land, is a sort of legislative donation of what would, without such donation, be public property.   It is a pure gratuity by the State to the riparian proprietor.   For there is no reason whatever, in the nature of things, why the purchaser or grantee of an arpent of land extending to the river bank should become, without any price paid or consideration passing, the owner of another arpent of land added to the first arpent by the effect of alluvial deposit.   His title to the second arpent is not the conveyance which he holds of the first; but it is the law.   This legal title refers, it is true, to one of the lines of the riparian proprietor's original title, as the measure of his right of accession in the alluvial accretions of soil.   But the line so referred to is not the side line of the original conveyance or grant.   It is its front line, and the front line alone.   The course of the side line is a matter of no consequence in the division of alluvion formed subsequently to the conveyance or grant.   The line

of such division must be drawn in such manner as that each of the contiguous riparian proprietors shall have such a proportion of the alluvial soil as the total extent of his front line bears to the total quantity of the alluvial soil to be divided.

There is no case in our Reports of any decision upon the construction of Article 508 of the Code; an indication that the understanding of the community and of the profession has been unanimous upon the subject. There is a case in 17th Louisiana Reports, page 573, somewhat analogous, in which a pretention of the First Municipality of the city of New Orleans to prolong one of its wharves so as to interfere with the wharves of the Second Municipality, was rebuked by the Supreme Court. But, that case turned upon the construction of the Act of 1836, dividing the city of New Orleans into three Municipalities.

II. The answer pleads that plaintiffs are estopped in law; for, by their silence and inaction, they have assented to the mode in which the batture has been laid off into squares and streets, and to the prolongation of the side lines of the faubourg across the batture.

In argument, this plea is amplified into one of the *locus in quo* by the plaintiffs to public use. In support of this view of the subject, defendants have given in evidence an act of partition between the heirs of *Madame Delord Sarpy*, on the 7th April, 1827, and the plan attached thereto. The argument is, that inasmuch as the land now claimed does not figure upon that plan, and as the plan and the act profess to represent and to divide all the real estate of *Madame Delord's* succession in New Orleans, therefore it must be inferred the heirs of *Madame Delord* have renounced all right of property in the *locus in quo*, if they ever had any, and have dedicated it to public use. And the learned counsel of the city relies upon the decision of this court in *Sarpy* v. *Municipality No. Two*, 9th An. 597, in which these same plaintiffs claimed the Tivoli Circle, and the same act of partition and plan were in evidence, and were commented upon by the court as acts of the plaintiffs, which, taken in connection with other acts in evidence, established a renunciation of the proprietorship of Tivoli Circle by the plaintiffs, and a dedication of the same to public use.

The two cases are not analogous. Without going into a review of the points of difference between them, it is sufficient to say that the existence of alluvion susceptible of private ownership outside of New Levee street, in the faubourg Delord, in 1827, is not proved; and if it were, the mere omission to figure it on a plan as part of the Delord estate, and to divide it among the *Delord heirs*, could not be construed into an abandonment of ownership in favor of the public. This would be pushing the doctrine of estoppel to an extent that none of the authorities warrant. In fact, the *Heirs of Delord* might very well have supposed in 1827 that the batture did *not* belong to them. Two years later the Supreme Court decided the case of *Cochrane* v. *Port*, (7 N. S., 622,) adversely, to a claim of batture by the riparian proprietor, within the limits of the city. It is well known that the late *Chief Justice Martin*, to the end of his career, maintained the right of the city to such batture; and the contrary doctrine was only finally settled, in the face of his dissenting opinion, in the Orleans Cotton Press case in the year 1841. 18th La. Rep.

III. The plea of prescription set up by the city rests upon the same foundation as that pleaded and overruled in *Kennedy* v. *Municipality No. Two*, 10th Annual, 54, a decision subsequently twice affirmed in the case of *Remy*, and of the *Heirs of Gaiennié* v. *the City*, in 11 Annual.

An error has been committed by the District Court in the amount of the judgment rendered against the city upon the call in warranty of its co-defendant *George May.* The city is only bound to refund what it received from its vendee *Holt*; and, although *Holt* afterwards received an advance upon what he had paid, from *his* vendee *May*, yet the latter, who, as he was authorized to do by the terms of his deed, has exercised *Holt's* right of warranty against the city, can evidently only do so to the same extent that *Holt* himself might have done.

It is, therefore, adjudged and decreed, that the judgment appealed from, be reversed, by reducing the amount awarded in warranty, from $8000 to $7350, for which sum judgment is hereby rendered in favor of *George May* (in restitution of cash and notes) against the city of New Orleans; that, in other respects, the judgment appealed from be affirmed, and that the costs of the court below be paid by all the defendants, and those of appeal by the defendant *May.*