HIGGINS, Justice.
 

 The plaintiff, one of several riparian proprietors, instituted this action against the defendant to have the boundary between their respective batture properties in Tensas Parish fixed and thereby determine the extent of the ownership of each party in the approximate 2,000 acres of batture formed by accretion along the banks of the Mississippi River. He also sought damages for the alleged wrongful removal of timber from a part of the 1,600 acres of the batture land claimed by him, and for injunctive relief against further alleged trespass. Other owners of property adjacent to the land in question were also named as defendants but their interest in the case appears to have passed out leaving the controversy for adjudication between the plaintiff Harper, the defendant Learned, and the intervener'Hart, Learned’s predecessor in title.
 

 The defendant filed a plea of estoppel based on an averred agreed and established boundary line between the lands in question, pleas of prescription of ten, twenty, and thirty years, and an answer, coupled with exceptions of no right and no cause of action. The intervener also filed identical pleas and exceptions.
 

 After an extended trial, the learned district judge overruled the exceptions, the pleas of prescription, and the pleas of estoppel insofar as they related to the boundary line and the division of the batture, but maintained them as to the established boundary line insofar as the timber was concerned, and granted the defendant a reasonable time for the removal of any timber on the batture on the defendant’s side of the agreed boundary line, should a survey disclose that any part of that land belonged to the plaintiff, appointed a surveyor and ordered the making of a survey in compliance with the articles of the Revised Civil Code, and rejected the demands of the plaintiff for damages and for an injunction.
 

 Appeals, both suspensive and devolutive, were duly taken and perfected by both litigants.
 

 The plaintiff contends that the judgment of the district court is correct in all respects, except that part sustaining the pleas of estoppel insofar as the averred timber rights of the defendant are concerned.
 

 The defendant complains that the judgment is erroneous in every way except in maintaining the pleas of estoppel as to his timber rights and states that all of his defenses were good and should have been maintained, especially the pleas of estoppel.
 

 
 *202
 
 , This action is essentially one of boundary in which the plaintiff, as riparian owner, claims some 1,600 acres of batture or alluvion resulting from accretion along the banks of the Mississippi River, under Article 516 of the Revised Civil Code, and prays that the boundary between his alleged property and the other adjacent properties be recognized and judicially fixed in conformity.with a certain ex parte plat prepared by his surveyor, Herbert K. Rhodes.
 

 The record shows that about fifty years ago Harper’s Island was elliptical in shape and located in the Mississippi River off the west bank thereof. The island, which defendant later purchased, was wholly detached from any part of the west shore. The river proper flowed to the east of the island. The navigable part of the river to the west of the island was known as Bieler’s Chute. For many years the plaintiff’s plantation known as China Grove lay diagonally opposite the southwestern end of the island. The island and the plantation were not contiguous. During many years the channel and the-banks of the Mississippi River have shifted from time to time, the river eroding large parts of the island and of the plantation and adding alluvion to either or both of them. The several stages of these physical phenomena are demonstrated by the testimony and the maps. The alluvion which had formed and was forming to Harper’s Island at sometime joined the outward formation of a similar deposit from the' shore line. The record does not reflect the extent of the alluvion development on the Island and the batture, which was formed by outward development from the bank line of-China Plantation nor at what period of time or along what physical line the conjunction of the two developing bodies of alluvial soil occurred.
 

 It appears from some of the exhibits that a very large portion of the alluvion in question was formed by attachment to Harper’s Island rather than to the old plantation front, although the plaintiff claims the major part of the alluvion, i. e., 1,600 of the 2,000 acres, to which the defendant says he is not entitled.
 

 There is no controversy between the parties as to their titles and ownership of China Grove Plantation and Harper’s Island, respectively. The real issue involves the proper boundary line over the batture, the establishment of which will also determine the acreage in this land to which each party is entitled.
 

 Howard Hart, the intervener, had been the owner of Harper’s Island from 1908 to 1931. He sold the property with warranty of title and subrogation to right of action of warranty to Learned in 1931. In 1908 Flart purchased his interest in Harper’s Island from Mrs. Mattie McDonald, the sister of the plaintiff, with warranty of title and subrogation of right of action of warranty. The plaintiff acted as her agent in making the sale and pointed out to the purchaser (Hart) the arm of the river or water course known as the Chute as the natural boundary line between the Island and China Grove and the other plantations on the west side.
 

 
 *203
 
 In 1917 the plaintiff desired to secure a loan from the Federal Land Bank and employed O. M. Fowler, a licensed surveyor of Natchez, Miss., to make a survey of his China Grove plantation and the batture thereto attached. In making this survey, Fowler ran the southeasterly line of the China Grove Plantation across the batture and followed the extension and line of the Chute, as the natural line and the agreed boundary between Harper and Hart, in a southwesterly direction to the river. It is plain that the Fowler survey divided the batture between the properties belonging to Harper and Hart, respectively, according to the natural line of its formation. The result was that China Grove thereby had more frontage on the river than it .had along the 1827-30 bank line, or the bank line of 1896-1906. Harper had the Fowler survey recorded in the public records and tendered it to Hart, then owner of Harper’s Island, and they agreed that the boundary line between them, as owners, across the batture, was as shown on'the survey. From 1917 to 1938 the Fowler line across the batture was openly, continuously, and unequivocally acknowledged and recognized as the boundary between the properties of Harper and of Hart, and subsequently, Learned. In 1919, by warranty deed, the plaintiff sold his plantation and all the batture belonging thereto to John Duckett, according to the Fowler survey. In 1920, by warranty deed, he reacquired from Duckett the plantation and all the batture belonging thereto, as shown by the Fowler survey. This is the title upon which the plaintiff predicates' his present suit and it was offered in evidence without qualification by him on the trial of the case.
 

 During the years of 1922 and 1928 Harper and Hart personally extended the Fowler line in a continuous straight line across the additional batture, which had formed and attached to their lands, to the river. The reason why this action was taken was because the United States Government desired to purchase the willow trees which were growing in the batture and the land owners, Harper and Hart, agreed upon the Fowler line and its extensions as the boundary between their lands, and sold the willow trees which the government purchased, according to that line. Each owner was paid and accepted payment by agreement, without protest, for the willows cut from his side of that boundary line between their properties.
 

 In 1931 the plaintiff pointed out to the representative óf the Mississippi Match Company, which sought to buy timber from him, the Fowler line and extensions as the boundary line of his property.
 

 In 1935, the United States Government desired to acquire flowage rights across a part of China Grove Plantation and Harper sold those rights according to the Fowler survey.
 

 H. R. Rhodes, a surveyor employed by the United States Government to prepare the description of the property for the government’s flowage rights in connection with the construction of the Rodney Cut-Off (made by the government to eliminate a large seven mile crescent shape bend
 
 *204
 
 in the river), used, as a part of the public records, the notes in connection -with the Fowler survey. This description was recognized as valid by the United States Government acting through Rhodes and others, and was confirmed by Harper in the execution of his deed thereto. Rhodes is the same surveyor who prepared the survey (Exhibit 1) annexed to the plaintiff’s petition in which plaintiff now seeks to have the boundary line changed on the ground of mutual error of law.
 

 The Fowler line was not only a well defined line on the survey but an unmistakable visible, physical boundary line consisting of trees 16 to 20 inches in diameter bearing the blazes and hacks of the surveyor. This boundary line is plain on the aerial photographs introduced in evidence by both parties. These large trees were deliberately and by consent of Hart and Harper set aside, blazed, and left standing to mark the boundary between their batture properties. They formed a natural fence more lasting and durable than one that might have been erected. In speaking of this boundary line, Harper said: “A man that ain’t blind can see mighty easy.”
 

 •In 1931 when Learned bought Harper’s Island and the batture thereto belonging, he investigated the boundaries thereof. He found the physical and recorded documentary establishment of the Fowler line by Harper and its determination as the boundary line between the properties of Harper and of Hart by agreement in accordance with the Fowler survey. He purchased the property in good faith and relied upon this established boundary in paying the sum of $6,000 cash therefor. He placed reliance upon the recorded instruments and the representations of the plaintiff as to the boundary line, which, together with the physical markings of the line, left no doubt that the line was well-established and free from dispute.
 

 The plaintiff admitted that for over twenty years he had always recognized and held out the Fowler line and extensions thereto as the boundary line of his property and had never questioned it until the institution of this suit in November 1938. The plaintiff and Hart both represented to Learned and his agent that the Fowler line and its extensions constituted the boundary across the batture. It appears that Learned would not 'have purchased the property if there had been any question about the boundary line and that he relied upon the recorded instruments, the physical markings of the land and the assurances and representations of the plaintiff and Hart that the Fowler line and extensions constituted the boundary line and there was no controversy relative thereto. It was upon these facts that the defendant and the intervener predicated their pleas of estoppel.
 

 The trial judge overruled the pleas of estoppel as to the boundary line of the batture on the ground that Article 516 of the Revised Civil Code provided the only legal method by which the boundary could be established, and therefore the parties had made a mutual error of law in establishing the line by agreement, but maintained the pleas insofar as the timber was con
 
 *205
 
 cerned on that part of the batture up to the Fowler line, as claimed by the defendant, and granted the defendant a reasonable time within which to remove it, and he also sustained the pleas of estoppel as the claim for damages for alleged trespass and cutting timber therefrom.
 

 From the foregoing facts and a reading of Article 516 Revised Civil Code, as conflictingly interpreted by this Court in Heirs of Delord v. City of New Orleans, 1856, 11 La.Ann. 699, Newell v. Leathers, 1897, 50 La.Ann. 162, 23 So. 243, 247, 69 Am.St.Rep. 395, and Akard v. City of Shreveport, 1941, 196 La. 714, 200 So. 14, it is apparent that Harper and Hart, being confronted with an uncertain and doubtful situation concerning the proper boundary line and the division of the batture or accretion in question, resorted to an amicable settlement thereof by mutual agreement. There is nothing in the public policy or laws of the State which prohibited them from doing so. They failed only in not putting in writing the bona fide agreement which both considered fair and reasonable. While the agreement was not reduced to writing, the recorder Fowler survey, which established the boundary line and the division of the batture, resulted therefrom and was confirmed in the subsequent authentic recorded acts by the parties. Thereafter, they and those who dealt with them relied upon' this boundary line and the division of the property, in acquiring their rights for a valuable consideration.
 

 In connection with this point, our learned brother below stated:
 

 “The most convincing arguments made by defendants are those in support of the plea of estoppel. There was clearly shown that on many different occasions (twenty-one as listed by defendant) and under various and divers circumstances, plaintiff, Harper, by acts,, statements, surveys, agreements, transfers, sales and mortgages and by testimony on this trial, was definitely of the opinion that there had been a fair division of the riparian rights in question. The cumulation of this mass of evidence is overwhelmingly conclusive that he believed that he was correct. * * *
 

 “The evidence clearly shows that Learned and his authors in title were acting bona fide when the purchase was made. Plaintiff by many acts demonstrated that he was also in good faith when he acquiesced in the land lines delineating the boundaries of the tracts from which the timber was sold. The evidence conclusively shows that he, by word, act, and deed agreed with the intervener, Hart, on the lines described in various instruments and surveys and by physical marks and boundaries clearly discernible at this time and for many years past.
 

 “ * * * He (Learned) had every reason to believe that the boundary lines agreed upon were approved by plaintiff; # * *
 
 »
 

 In the case of Jackson et al. v. United Gas Public Service Co. et al., 196 La. 1, 198 So. 633, 641, the heirs instituted a petitory action to be recognized as the owners and to be placed in possession of an undivided one-fourth interest in certain lands
 
 *206
 
 located in the Rodessa Oil Fields, Caddo Parish, La. The defendants pleaded that the plaintiffs were estopped to deny the facts, declarations, representations, and warranties made by the plaintiffs and relied upon by the defendants in acquiring title to the whole of the property by several different acts of transfer. It appears that the plaintiffs had made statements and representations and had held themselves out as regular heirs in the succession and tutorship proceedings and that the defendants, relying thereon, had acquired, what appeared to be, the title to the whole of the property through several acts of sale. In the petitory suit, they sought to show that they, as irregular heirs, had inherited an additional one-fourth interest in the property, as a result of certain irregular heirs not claiming their share thereof after a period of thirty years, and that they had not conveyed to the defendants this one-fourth interest in the land.
 

 With reference to the claims of the majors in sustaining the estoppel, the Court, on rehearing, said:
 

 “Plaintiffs herein can not now say that they are only irregular heirs of Richard and Louisa Gibson and that they own a one-fourth interest in the property, which they sold, to the defendants in 1919 on the representation that they were legal heirs and with-the judicial admission that the defendants were then co-owners of a nine-tenths interest in the property by purchase from all of the legal heirs of Richard and Louisa Gibson and Gus Gibson, Sr. * * * ”
 

 .In connection with the representations made by the tutrix and under tutor of the two minor children that they were legal heirs and, as such, entitled to one-tenth and the defendants to nine-tenths of the prop; erty, the Court in sustaining the plea of estoppel stated:
 

 “ * * * Relying upon these representations and judicial admissions of facts', publicly declared, defendants paid the plaintiffs the purchase price, in cash, for the property. The minors having received the benefit of the sale are estopped to deny the judicial statements and admissions of their duly authorized legal representatives, who acted in good faith.
 

 “ * * * While it is necessary that the rights of minors be protected in every way possible, it is likewise essential that titles to real estate should be stable and certain and, therefore, where the legal representatives of minors, acting in their behalf, follow the requirements of the law in representing them to the best of their ability and understanding in a way that is considered most advantageous and beneficial to the minors’ interest, the minors are thereby bound and are estopped to deny the judicial declarations of fact and representations made by their tutor in their behalf, when third persons have relied thereon and dealt with them in good faith and for a valuable consideration. * * *
 

 “ * * * The plea of estoppel here is predicated on the solemn acts and representations of the plaintiffs made in judicial proceedings and authentic acts, upon which the defendants relied in purchasing .the property and parting with a valuable consideration therefor. * * * ”
 

 
 *207
 
 In Mims et al. v. Sample et al., 191 La. 677, 186 So. 66, 72, the plaintiff instituted a suit to annul a written document referred to as a declaration of ownership wherein the proportionate interests of the co-owners of a 400 acre tract of land in B'ossier Parish were set forth, alleging error and misunderstanding, and praying for a judgment recognizing the respective correct proportionate interests of the owners in indivisión. The defendants, who were not parties to this agreement, filed a plea of estoppel on the ground that the respondent Sample relied on the recorded document setting forth the respective proportionate interest of the co-owners in purchasing his interest in the land and, therefore, Mims was estopped to claim a greater interest than an undivided one-seventh as set forth in the agreement. The trial court sustained the plea and in affirming this judgment, we said:
 

 “Supplementing the reasons of our learned brother below for sustaining the •plea of estoppel as against Spencer Mims, it was shown that prior to the time of the execution of the document in question, he had signed a similar instrument in connection with an oil and gas lease, wherein he stated that his interest in the 400 acre tract •of land was an undivided one-seventh. Defendant Sample and his vendors had nothing to do with that transaction. There was .also testimony tending to show that he considered.himself to be the owner of a one-seventh interest and that, at the time of the execution of the alleged erroneous document, his attention was called to the fact that his interest was declared to be one-seventh therein, and that the purpose of having each of the co-owners sign it was to clear the title so that the respective owners could dispose of their interests when they saw fit to do so. This, of course, was necessitated by the attorney refusing to approve the title until the complicated and uncertain condition of the title was clarified. There is no doubt that Sample relied on this recorded document in purchasing his interest in the land.”
 

 In Chaumont Oil Co., Inc., v. Le Blanc, 185 La. 640, 170 So. 21, 23, the plaintiff instituted a petito.ry action to recover one-half interest in a tract of land in Acadia Parish, La. The defense was that the plaintiff and its authors in title were es-topped from questioning the partition of the sixty-two arpents of land previously owned in indivisión by Don Louis LeBlanc in the proportion of an undivided one-half thereof and by Mrs. Anna LeBlanc Hanks and her husband Joseph Hanks, in the proportion of an undivided one-fourth each, which partition was made in the form of a deed by Mr. -and Mrs. Joseph Hanks to Onezime Melancon on November 27, 1909, and duly recorded, and by the act of transfer from Don Louis LeBlanc to Euclide LeBlanc dated December 2, 1909, also properly recorded, Euclide LeBlanc, defendant, having acquired the south half of the property in good faith for a valuable consideration. In sustaining the plea of estoppel, the Court said:
 

 “Considerable testimony was offered to show that the owners of the north and south halves of the 62 arpents had established the dividing line of their respective
 
 *208
 
 properties, on the grotind, by a turn row, and other indicia of said boundary line. The plaintiff contends that, in the sale of the north half of the 62 arpents of land to Onezime Melancon, Joseph Hanks joined in the said act of sale merely to aid and authorize his wife. It must be remembered that Mr. and Mrs. Hanks each owned a one-fourth interest in the property, and it required the transfer of the' interests of both in order to convey to the purchaser one-half of the whole property. Each knew the extent of his or her interest therein and neither has, at any time, questioned their vendee’s title to a full one-half of the whole property. It is only after the lap§e of approximately 25 years, and after the discovery of oil in paying quantities on the south half of the 62 arpents of land, that speculators, in search of easy money, have endeavored to take advantage of what they conceive to be a flaw in Euclide Le Blanc’s title to, at least, one-half of his property, while the unattacked title of Onezime Melancon is in the identical situation.
 

 “By the conduct and acquiescence of Mr. and Mrs. Joseph Hanks, the plaintiff’s authors in title, the defendants’- plea of estoppel is well founded, * *
 

 The Court also sustained the plea of ten years’ prescription.
 

 In the case of Handlin v. City of New Orleans, 121 La. 565, 46 So. 652, the plaintiff brought suit for damages against the City, alleging that it trespassed in taking his property for' a street. The defendant pleaded that the plaintiff had estopped himself to deny the dedication of the land as a street, relying upon the act of partition passed years before, a written lease, a previous law suit and an advertisement of the property for sale — in all of which matters the plaintiff had described his property as being bound by the street in question. The defendant was neither a party nor a privy to any of those transactions. The Court on that evidence consisting of acts between the plaintiff and third parties, held that the plaintiff was estopped to deny the dedication of the land as a street and as constituting the boundary of his property.
 

 In the instant case, in spite of the five specific instances of the plaintiff’s affirmation by public acts and by public records of the Fowler line as the boundary line across the batture as extended and the agreed visible boundary line unmistakably marked by the trees, he is now seeking to deprive the defendant of a great part of the batture and trees, contrary to his own agreement and solemn recorded acts. He was fully apprised of the entire situation, having lived almost all of the eighty years of his life on the plantation. He was in no wise illiterate or uneducated. He does not even suggest that anyone took advantage of him and could not because he was the main proponent in establishing the boundary line of the properties and the division thereof, which he now seeks to disavow.
 

 All -of the requisite legal elements of estoppel appear: (1) The acts, representations and declarations of the plaintiff; (2) the actions by the defendant in relying thereon; and (3) the irreparable injury which the defendant will suffer if the plaintiff, is permitted-to change his position and
 
 *209
 
 repudiate his acts and representations after more than twenty years.
 

 The plea of estoppel is well founded and is, therefore, sustained.
 

 The authorities relied upon by the plaintiff fall into three classes: First, cases denying estoppel where the party sought to be estopped was ignorant of the facts; second, cases holding that title to realty cannot be proved by parol; and, third, cases holding that estoppel by deed cannot be urged except by the parties to the deed and their privies.
 

 ■ It is clear that the plaintiff cannot evade esto.ppel herein on the grounds of ignorance of the true facts in view of the record in this case.
 

 The defendant is not attempting to establish a verbal link in his chain of title in a petitory action. The titles and respective acts of purchase of both parties are admitted. Therefore, there is no necessity for proof of these titles. This suit was instituted for the purpose of establishing the boundary line and thereby the division of the accretion to the lands, which the respective parties have titles to as contiguous riparian owners. The batture or accretion is granted to the riparian owner by law. Revised Civil Code, Article 516. Parol evidence is admissible to prove a visible boundary recognized by the parties. Blanc v. Duplessis, 13 La. 334. Furthermore, parol evidence is admissible to establish-equitable estoppel.
 

 Estoppel by deed is a particular type of estoppel and is not an estoppel in pais or equitable estoppel. The deeds and records offered in evidence were tendered by the defendant as valid and effective evidence as the acts and representations of the plaintiff that go in part to constitute the conduct and the equitable estoppel by which he is bound. Therefore, it appears that the authorities relied upon by the plaintiff are inappropriate.
 

 For the reasons assigned, the judgment appealed from is annulled and it is now ordered, adjudged and decreed that the plaintiff’s suit is dismissed at his costs.