William T. Duncan on July 20, 1942, sold to his son, Laurance R. Duncan, the south half, and to his son, Albert S. Duncan, the north half of the following described lot of land that fronts on Cross Lake in Caddo Parish, Louisiana, viz.:
"* * * that certain 2.241 acres of Lot Ten (10) of Evan Subdivision of the Parish of Caddo, State of Louisiana, as per map of same in conveyance book 250, page *Page 787 
442, of the Records of Caddo Parish, Louisiana, together with all buildings and improvements thereon, being a subdivision of Lot 3 of Section 33, Township 18, Range 15, Caddo Parish, Louisiana."
To the end that the shape and form of this lot may be better understood, we attach and make part of this opinion a plat thereof on which has been drawn the dividing line about which much will be said hereinafter:

The sales to the sons were made before the establishment of the division line which appears on said plat, in fact, before any division line across the lot was established. Each son erected a residence on that part of the land he believed belonged to him; that is, Laurance thought the building he erected was on the south half of the tract while Albert believed he had built on the north half. They evidently were of the opinion that a line running due east and west across the tract, giving to each the same acreage, would fall between the two residences.
In May, 1943, Laurance Duncan negotiated with a man named Ives to sell his south half of the tract, and in order to *Page 788 
definitely fix the division line between him and his brother, Mr. George E. Dutton, civil engineer, was engaged by them to run and establish the same. It was then first learned that a line running due east and west across the tract, parallel to the south boundary line thereof, that would give each owner exactly the same acreage, would fall north of the residence erected by Albert Duncan, or, in other words, both residences would be south of such a line and on Laurance Duncan's land. The two brothers at that time authorized Mr. Dutton to run a line that would divide the tract equally so that the residence of Albert Duncan would be north of such line. This was done by Mr. Dutton by beginning on the east line of the tract, a few feet south of Albert Duncan's residence, and running north 79° (degrees) 40' (minutes) west, a distance of 445 feet to the west line of the tract. Both ends of the line thus run were marked by iron stakes driven into the earth. The stake at the east end, near the house, was on the east side of a gravel road along the eastern boundary of the lot. Mr. Dutton prepared a plat of the lot on which was placed the dividing line, but unfortunately the plat was not approved in writing by the Duncan brothers, and was not placed of record. However, it was definitely understood and agreed by and between them that this line properly subdivided the lot and that each owned and possessed with respect thereto.
The negotiations with Ives did not result in a sale to him.
On July 1, 1943, Albert S. Duncan sold to defendant, Mrs. Ruth H. Travis, wife of Milton E. Travis, the north half of said lot with buildings and improvements thereon, and on May 10, 1945, Laurance R. Duncan sold to James E. Selfe, plaintiff herein, the south half of said lot, with all buildings and improvements thereon. In neither of these deeds is reference made to the Dutton survey. A few days before the sale to Selfe was closed by execution of deed, he had R.E. Oxford, a civil engineer, run a line due east and west across the lot so as to allocate to the north and south portions thereof equal acreage. This line fell north of the house built by Albert S. Duncan.
On or about June 27, 1945, Mrs. Travis began to remove the Albert Duncan residence to a new location also north of the line established by Dutton. Thereupon plaintiff instituted the present suit to prohibit her from doing so and to have the residence adjudged to him upon the payment by him of the cost of labor and material employed to erect it, as provided by Article No. 508 of the Revised Civil Code. He alleged the building to be worth approximately Six Hundred ($600.) Dollars.
On plaintiff's application therefor a restraining order issued whereby defendant was temporarily enjoined from moving the building, and she was ruled to show cause at an hour and on a date fixed by the court why a preliminary injunction should not issue. This rule, by consent, was thereafter continued and re-fixed for trial on September 19, 1945.
Defendant moved to dissolve the temporary restraining order with damages. The basis of the motion is that the building is not located upon plaintiff's land but upon the land of the defendant, and, for this reason, the allegations upon which the order issued are untrue. Answer to the merits was filed at the time the motion to dissolve was filed. By agreement of counsel the motion to dissolve was referred to the merits. The gravamen of the answer is that the line run and established by Dutton is the true and correct dividing line thereof and is binding upon both the plaintiff and defendant. Elaborating upon this position, defendant avers that prior to the time she and plaintiff purchased their respective parts of the lot, although on different dates, the author in title of each pointed out said dividing line and stated that that line had been agreed to by them (the Duncans) as the true division line of the property, and must be observed and accepted by plaintiff and defendant or else the sale in each instance would not be made; that each sale was made with the distinct understanding that the Dutton line was the true division line and would be recognized and observed by both purchasers. Defendant further pleads that since plaintiff bought his part of the lot under the circumstances and with the knowledge above outlined, he is equitably estopped *Page 789 
to deny that the Dutton line is binding upon him.
Defendant re-asserts the claims of damages set up in the motion to dissolve, and, in the alternative, she asks the court to fix the value of the building, plus some inside attachments, at $1,526.75.
Plaintiff's demands were rejected at his cost. Defendant's damage claims, based upon the alleged illegality of the temporary restraining order, were also rejected. The Dutton line was recognized as being the true and correct dividing line between lands of plaintiff and defendant. Plaintiff appealed. Answering the appeal, defendant prays that the judgment be amended by awarding to her the damages itemized in her motion to dissolve.
Plaintiff's position is that since evidence of the division of the lot by Dutton not having been placed on the public records prior to his purchase from Laurance Duncan, such line is not binding on him, and, further, that he had no knowledge prior to his purchase from Laurance Duncan that Dutton had run and established the line; and that the line on the ground was not shown to him before the deed conveying the south half of the lot to him was executed.
Defendant's position is that the division of the lot by the Dutton survey was made known to plaintiff before he purchased from Laurance Duncan; that the stakes at each end of the line and the line on the ground were pointed out to him before closing of said sale; that he purchased with reference to that line as the north boundary of the property he acquired. For these reasons defendant contends that his status is not that of an innocent purchaser who acquired without notice, and, therefore, he is now equitably estopped to challenge the Dutton line.
Plaintiff's testimony supports his contention that the Dutton survey and line were matters not known to him before he acquired the south half of the lot, but he does admit that the iron stake at the east end of the line was shown to him by someone of the number of persons who, with him, were on the ground, inspecting the locus, prior to his purchase. But, he would have us believe that with knowledge of this definite initial point he evinced no further interest in the line nor the course it would go from there. This stake, as said before, is a few feet south of the Albert Duncan residence, a fact obvious to anyone who cared to see. It would seem most unusual for a man of the age and business experience of plaintiff to risk an investment of $2,700 without learning from his vendor the exact boundaries of so small a parcel of land. That was the very reason he inspected the property with Laurance Duncan and others; that is, to learn exactly its outside limits.
Plaintiff admits that he knew he was not acquiring Albert Duncan's house when he purchased from Laurance Duncan. Is it not reasonable to conclude from this admission that he must have believed, for some good reason, that that building was not on the land he was purchasing?
The overwhelming preponderance of the testimony, coming from witnesses whose veracity is not questioned, refutes the testimony of plaintiff as regards the information imparted to him about the Dutton line and its course upon the ground from the stake he admits he knew was on the east side of the tract. We have to conclude from this testimony that both ends of this line, only 148 yards apart, and the course of the line iteslf, were shown to plaintiff while he was negotiating with Laurance Duncan to purchase the south half of the lot; that he purchased with reference thereto and that Laurance Duncan sold to him with the understanding that the Dutton line would be accepted as the north line of the tract he was purchasing.
It is true that plaintiff, on his own motion, had a division line run east and west across the lot that equally divided the acreage which fell north of the Albert Duncan residence, but, strange as it seems, the fact that he had done this was not made known by him to anyone in interest. If plaintiff's prior knowledge of the location of the Dutton line on the ground was to any extent affected by the survey he had made, he did not disclose the fact to anyone so far as the record discloses. He remained silent when he should have spoken.
It is of some significance that several weeks prior to the date on which removal *Page 790 
of the house began, defendant and her husband discussed with plaintiff the route to be followed in doing so, and that plaintiff, then and there, offered no objection to the proposed removal. He admits this. Does this not clearly reflect a consciousness on plaintiff's part that this house was not on his part of the lot and that he well knew this to be true when he made his investment? It seems so to us.
[1] The following excerpts from the lower court's reasons for judgment contain logical deductions and unanswerable inferences, viz.:
"Selfe, at the time of the signing of the contract to purchase, undoubtedly contemplated the Dutton line. This is absolutely established by his admission that he only expected to acquire one house. Subsequently, after learning of his legal rights, the line shown on the Assessor's plat and run by his surveyor, Oxford, he got other ideas. These he failed utterly to convey to his vendor. He does say that he claimed to be purchasing land between parallel lines, but fails to establish this by any preponderance of proof. For him not to have informed his innocent vendor of his changed ideas, or to demand that the Oxford line be mentioned in the deed certainly to say the least, puts him in bad faith. A position utterly inconsistent with that of an innocent third party.
* * * * * *
"Selfe, having permitted his vendor to execute the deed intended by the vendor to convey according to the line staked out by Dutton, knowing that the description therein was in conflict with this line, is equitably estopped to repudiate the agreed boundary."
We fully concur therein.
Lastly, plaintiff contends and argues that parol testimony was inadmissible to prove that which the public records do not disclose. He invokes the provisions of Articles Nos. 2266 and 2276 of the Revised Civil Code, which read as follows:
"All sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording.
"The recording shall have effect from the time when the act is deposited in the proper office, and indorsed by the proper officer.
* * * * * *
"Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since."
Reference to decisions of the courts of this state citing, construing and applying these articles is made.
[2] The establishment by survey of a boundary line by owners of adjoining lands does not create, destroy nor confer title. Such action is resorted to to definitely determine the limits of pre-existing ownership in such way that each owner may know how far his ownership extends and where his neighbor's begins.
[3, 4] The provisions and prohibitions of the quoted articles do not invariably extend to agreements whereby boundary lines are established by mutual agreement of adjoining owners. The facts and circumstances of each case, in a large measure, determine whether the established line is binding upon persons who are not parties to the agreement whereby the line was established. Parol testimony, it is now well settled by jurisprudence of this and other states, is admissible to prove the fact that a survey has been made, the location of the line fixed thereby, and acceptance thereof by the parties thereto and third persons.
The rule is well expressed in 8 American Jurisprudence, 7797, § 73, as follows:
"Although there was in the early cases much doubt as to the validity or legal force of parol agreements and submissions to settle disputed boundary lines, it is now a well-settled principle of law that an unascertained or disputed boundary line dividing the lands of adjoining owners may be permanently and irrevocably established by a parol agreement of the adjoining owners. It is essential to the validity and binding effect of such agreement that the boundary line fixed by the agreement be definite, certain, and clearly marked, and that it be made by the adjoining landowners with reference *Page 791 
to an uncertain or disputed boundary line between their lands. Such an oral agreement is not in contravention of the statute of frauds; and when executed and actual possession is taken under it, it becomes conclusive against the owners and those claiming under them. It has been said that the efficacy of parol agreements and acts of the parties pursuant thereto conclusively to establish a boundary line rests upon the doctrine of estoppel."
In Harper v. Learned et al., 199 La. 398-417, 6 So.2d 326, 332, the court specifically held: "Parol evidence is admissible to prove a visible boundary recognized by the parties." Blanc v. Duplessis, 13 La. 334, is cited. The court also said: "Furthermore, parol evidence is admissible to establish equitable estoppel." Such a plea was tendered and upheld in that case, the court saying, as we do in the present case:
"It is clear that the plaintiff cannot evade estoppel herein on the grounds of ignorance of the true facts in view of the record in this case."
In Kittridge v. Landry, 2 Rob. 72, it was held that a notarial act, not recorded, wherein was fixed a boundary line, was void as to third persons or innocent purchasers withoutnotice.
The opinion in Simmons v. Miller, La. App., 170 So. 521, supports the conclusions we have reached herein.
There are expressions in the case of Williams v. Bernstein, 51 La. Ann. 115, 25 So. 411, to the effect that a boundary agreement not recorded nor brought to the purchaser's notice by recitals in the deed, is not binding on him. The facts of that case are materially different from those of the case at bar. It does not appear that the purchaser was shown the line on the ground and bought with reference thereto. Regardless of this, that which was said by the court in Harper v. Learned, supra, is the last expression of the Supreme Court on the subject and we feel constrained to follow it.
The record with respect to the facts pertaining to the preliminary injunction is to some extent not clear. On September 19, 1945, the date the rule, as continued, came on for hearing, the minute entries read as follows:
"Motion to dissolve restraining order filed Sep. 18, 1945, by Defendant. Answer filed Sep. 18, 1945. By consent, motion to dissolve restraining order referred to the merits. (Judge O'Neal.)
"Supplemental and amended petition filed this day. By consent rule returnable herein this day was submitted and made absolute (see decree). Judgment in accordance read, signed and filed. (Judge O'Neal.)"
The judgment making absolute the rule referred to in said minutes, reads as follows, to-wit:
"In this case, upon trial of the rule to show cause why a preliminary injunction should not issue, defendant consenting thereto without trial, the law and the evidence being in favor thereof:
"It is ordered, adjudged and decreed that said rule be made absolute; that, accordingly, a preliminary injunction issue herein as prayed for upon plaintiff furnishing bond in the sum of Five Hundred Dollars.
"Done, read and signed in open court on the 19th day of September, 1945.
"/s/ Robert J. O'Neal "District Judge"
The case on the merits was tried before Judge E.P. Mills, who disposed of defendant's claims of damages in the following language, to-wit:
"On September 18, 1945, defendant filed a motion to dissolve, with a demand for damages which was referred to the merits. On the same date she filed an answer in which she claimed a total of $450.00 damages caused by the restraining order. The minutes show that on September 19, 1945, when the rule for a preliminary injunction came up, it was made absolute by consent of the parties, without reservation. We cannot conceive how damages can be claimed for an injunction which is consented to. Of course, the restraining order became merged in the preliminary injunction."
[5-7] Counsel for defendant in brief informs us that he had not seen the minute entries until the record in the case had been made up and filed in this court. He complains that the record does not reflect the true facts as they transpired in the *Page 792 
lower court, in that while he agreed that the rule be submitted without trial, he did not agree to it being made absolute as the record discloses. The second of the quoted minute entries may easily be construed as counsel contends, that is, that he agreed to the submission of the rule without trial but did not agree that it be made absolute. But the judgment signed by Judge O'Neal 'is not susceptible of such construction. It is unambiguous and controls over the minutes. If the judgment does not clearly reflect the true' facts as they transpired before submission of the rule, correction thereof should have been timely asked in the lower court. More than one year has passed since the judgment was signed. It seems to us that no recourse is now available to defendant to correct the alleged error of which she complains.
For the reasons assigned herein, the judgment appealed from is affirmed, with costs.