MILLER, Judge.
In this boundary action, plaintiffs appeal the judgment establishing defendants’ south boundary in accordance with the court appointed surveyor’s “ideal boundary” rather than along a boundary allegedly established by the respective parties’ ancestors in title. We affirm.
An unusual aspect of this case is that to establish the disputed boundary, the trial court was first required to determine the boundary of an adjacent tract which boundary had never been judicially or extra judicially fixed.
The seventeen plaintiffs are the owners of a nine-tenths interest in a tract inherited from Adele Guidry Dupuis. The two defendants own the remaining one-tenth interest in that tract, and also own the entirety of the adjoining tract to the north. Defendants’ father Ledel (sometimes spelled Ledelle) Dupuis, Sr. acquired the north tract by donation from his mother Adele dated October 19, 1944, transferring this property:
That certain tract of land with all improvements thereon, situated in the Fifth Ward of the Parish of St. Martin, Louisiana, on the East side of Bayou Teche, and containing twenty-four (24) arpents, more or less, bounded on the North by property of Alton Huval and by Dermi-lie Calais, on the South by the balance of property of the donor, on the East by Alton Huval and a public road, and on the West by a tract of land presently belonging to Ledelle D. Dupuis. It is the specific intention of the parties that the *638 South line of the property herein donated shall be a prolongation on the East of the South line of the said tract of land of Ledelle D. Dupuis, located on the West of the property hereby donated. (Emphasis added.)
The dispute concerns the interpretation of the emphasized portion of the property description. This is the boundary which plaintiffs allege has never been established either judicially or by agreement of the parties, and plaintiffs here seek to have it judicially determined.
To determine the boundary between the two tracts it is necessary to consider the boundary between two adjoining tracts as of the date the donation was confected. Most of the three day trial was related to establishing the south boundary of Ledel’s tract located to the west of the donated property.
A brief statement concerning the respective titles is essential. In September of 1912, Adele acquired by dation en paiement from her husband, L. Beauregard Dupuis, a‘ tract containing SO arpents in superficial area, bounded north by land of Dermily Calais, south by Public Road, east by Public Road and west by property this day sold to Aurelien J. Dupuis. Aurelien J. Dupuis later conveyed the west bound tract to his father and that tract was part of Beauregard’s estate when he died. Beauregard’s eleven children and his widow Adele partitioned his properties by instrument dated November 19, 1919. Eugene and Ledel were represented by their mother (Adele) in the partition because they were minors. In the partition, Ledel received the North Half of “a fifty arpent tract bounded North by D. Calais, South by Public Road, East by lands of appearers (Adele), and West by lands of Madam Paulin Latiolais.” (Tr.103). Eugene received the South Half of the same tract.
By instrument dated March 12, 1930, Ledel and Eugene acknowledged that they had taken actual possession of the property allotted to them in the partition, and they did approve, ratify and confirm in its entirety the action of their mother.
Shortly after the 1919 partition, a ditch was constructed across Ledel and Eugene’s “SO arpent tract” and in 1940 a fence was constructed along this line. Plaintiffs contend that the proper boundary should be a prolongation of the “ditch and fence line” while defendants contend that this line was never accepted by Ledel and Eugene as the boundary between their tracts.
The trial court carefully reviewed the evidence and in well supported reasons concluded that as of the October 19, 1944 donation to Ledel, no boundary between Ledel and Eugene had been judicially established, nor had a boundary been established by mutual agreement, acquiescence, survey, or prescription. The court accepted the “ideal boundary” located by the court appointed surveyor which recognized Ledel’s North Half to contain 18.583 acres and Eugene’s South Half to contain 18.614 acres. That line was projected to the east and the projection was judicially established as the south boundary of the tract Adele donated to Ledel.
Plaintiffs contend that the proper boundary between Ledel and Eugene is located some 380 feet to the north along the “ditch and fence line”. They specify as errors that the trial court failed to apply:
(1) the ten year prescription of LSA-C. C. art. 853;
(2) the thirty year prescription of LSA-C.C. art. 852;
(3) plaintiffs’ plea of estoppel; and
(4) donor’s expressed intention to establish the south boundary as a continuation of the line of occupation.
Plaintiffs contend that the court appointed surveyor erred in failing to recognize that the “50 arpent tract” awarded to Le-del and Eugene in the 1919 partition was irregular in shape. It is contended that Le-del’s portion north of the “ditch and fence” line was much wider than the south por *639 tion possessed by Eugene. If this contention is correct, then the survey which was adopted by the court was erroneous.
The trial court carefully considered this contention and ruled that the 1919 property description did not allow for this construction. There was substantial evidence in the record to support the holding that the tract was rectangular in shape and did not contain the dog leg suggested by plaintiffs’ evidence.
I.
Ten Year Prescription of Civil Code article 853
LSA-C.C. art. 833 prescribes the manner in which boundaries may be fixed between contiguous estates, either judicially or ex-trajudicially. This article requires either a survey according to specific formalities or a written agreement between the parties designating the boundaries.
LSA-C.C. art. 853 provides:
If the boundaries have been fixed according to a common title, or according to different titles, and the surveyor had committed an error in his measure, it can always be rectified, unless the part of the land on which the error was committed, be acquired by an adverse possession of ten years, if the parties are present, and twenty years, if absent.
Three separate lines of cases have interpreted this article. According to the first, the ten year prescription applies in instances where there has been no prior survey, but there have been visible boundaries placed there by consent of the parties and actively acquiesced in for many years. Morris v. Prutsman, 7 La.App. 404 (La. App. 1 Cir. 1928), and dictum in Opdenwyer v. Brown, 155 La. 617, 99 So. 482 (1924). According to the second line of cases, the ten year prescription applies in instances where the lines have been fixed by survey even though the survey does not comply with C.C. art. 833 formalities, provided the parties actively acquiesce in the surveyed boundary for the requisite period. LaCalle v. Chapman, 174 So.2d 668 (La. App. 3 Cir. 1965), and suggested in Sessum v. Hemperley, 233 La. 444, 96 So.2d 832 (1957). Finally, it has been held that the ten year prescription applies only where the lines are fixed following a survey conducted pursuant to all formalities provided by C.C. art. 833. Harvey v. Havard, 225 So.2d 615 (La.App. 1 Cir. 1969).
All these cases agree that regardless of the manner or method by which the lines are established, the ten year prescriptive period is not applied unless it be shown that the adjacent landowners have actively acquiesced in the location of the boundary. Blanchard v. Monrose, 12 La. App. 503, 125 So. 891 (1 Cir. 1930); Harvey v. Havard, supra; Opdenwyer v. Brown, supra; Sessum v. Hemperly, supra ; and LaCalle v. Chapman, supra.
The mere passive failure to object to the location of a fence, drain ditch, or turnrow, cannot form the basis for ten years prescription under C.C. art. 853. There must be consent of the parties or their active acquiescence coupled with the realization of the fact that they were actually consenting to a boundary and acquiescing in its location. Blanchard v. Monrose, 12 La.App. 503, 125 So. 891, 893 (1 Cir. 1930).
The trial court held that Ledel Dupuis, Sr. possessed that portion of the “50 ar-pent tract” from its north line south to the “ditch and fence” line and not beyond that point; that Eugene Dupuis possessed that portion of the “50 arpent tract” south of the “ditch and fence” and not beyond that point; and stated:
I have no difficulty in concluding from the record that a visible boundary across the “50 arpent tract” existed from the year 1920 and that up until two or three years ago the owners of the north and south halves of this tract possessed up to but not beyond that boundary.
*640 There was testimony by one plaintiff that a survey had been made sometime about 1920, but he was not present when the survey was made and could not recall the surveyor’s name. A disinterested witness testified that he was told at a family meeting attended by all members of the family that the property line had never been fixed by survey. There is no manifest error in the trial court holding that the “ditch and fence” line dividing the “SO arpent tract” was not established by survey.
The trial court held that it was not established that Ledel and Eugene agreed or consented that the visible marking (ditch and fence line) would serve as their boundary line. He held that they did not actively acquiesce in that boundary. He held that Ledel and Eugene each took possession of a part of the “50 arpent tract” and that at least insofar as Ledel was concerned, his action in failing to possess land south of the “ditch and fence” was at most a passive acquiescence in that visible boundary. To support this conclusion, the trial judge relied heavily on testimony of Mr. Fred Colomb, a surveyor, whose testimony he found to be “candid and impressive.” Colomb had been called in by the family in 1958 following the death of Adele for the purpose of surveying the “50 arpent tract” and the adjacent tract acquired by Adele in the 1912 dation en paiement. At that time Adele’s heirs were attempting to partition the tracts and to amicably reduce the donation to Ledel. Co-lomb testified that he met with the family and it was generally agreed that the lines between the several properties had never been fixed by survey or otherwise and that visible boundaries were to be disregarded.
The holdings that there was no initial survey in 1919, and that there was no consent or active acquiescence in the visible boundary across the “50 arpent tract”, are findings of fact which are supported by reasonable inferences from credible evidence in the record, and will not be disturbed. Canter v. Koehring Company, 283 So.2d 716, 724 (La.1973). On this factual determination the trial court properly rejected plaintiffs’ claim to the ten year prescription of LSA-C.C. art. 853.
II
Thirty Year Prescription of Civil Code article 852
 Plaintiffs contend that Ledel and Eugene possessed their respective tracts up to the “ditch and fence” since 1919. The trial court properly held that since the donation was made in 1944, the relevant south boundary of Ledel’s portion of the “50 arpent tract” is the one which existed in that year. The boundary could not have become established or fixed under thirty year prescription as provided for by C.C. art. 852, because thirty years had not elapsed between the 1919 partition and the 1944 donation. Furthermore the prescriptive period did not commence until the minors came of age.
III
Plea of Estoppel
Since the trial court recognized that Ledel never possessed south of the “ditch and fence” line (and Eugene never possessed north of the line), plaintiffs contend that Ledel recognized this line as his boundary from 1919 until his death in 1959. It is argued that his heirs are now estopped from claiming land south of the projection of this line. Harper v. Learned, 199 La. 398, 6 So.2d 326 (1942); Charrier v. DeVille, 168 So.2d 464 (La.App. 3 Cir. 1964).
The plea of estoppel is based upon the contention that Ledel and Eugene in fact entered into an agreement concerning their boundary or at least recognized this “ditch and fence” line as their boundary.
Plaintiffs point to testimony of plaintiff A. J. Dupuis, brother of Ledel and Eugene, *641 who testified that he was present when Ledel, Eugene and their mother, Adele, agreed in 1919 to the boundary. He testified that shortly after the agreement, the parties went upon the land and mutually constructed the drain ditch along the line. A. J. Dupuis also testified that Ledel and Eugene, although minors, personally went into possession of the land according to this agreement.
The trial judge rejected this testimony and accepted convincing testimony to the contrary. Plaintiffs have failed to establish manifest error in that conclusion.
The case of Harper v. Learned, 199 La. 398, 6 So.2d 326 (1942) is distinguished. There defendant purchased pursuant to a recorded survey which had been in existence for some time and which had been undertaken and recorded at the instance of one of the parties.
Charrier v. DeVille, 168 So.2d 464 (La.App. 3 Cir. 1964) is also distinguished. The court there found an actual agreement between the parties. No such agreement was established in the instant case.
There is no manifest error in the trial court’s refusal to recognize plaintiffs’ plea of estoppel.
IV
Donor’s Intention
No parol evidence was presented to show Adele’s intentions when she executed the 1944 donation. Plaintiffs urge that she intended the south line of the donated tract to be an extension or prolongation of the existing line of occupancy — the “ditch and fence” line. Defendants contend that what was intended was a prolongation of the proper line called for in the 1919 partition (one which divided the tract in half). It is argued that since that line had never been established by agreement, nor by prescription of ten or thirty years, then the boundary is the “ideal boundary” accepted by the court. Plaintiffs cite Cheramie v. Vegas, 273 So.2d 703 (La.App. 1 Cir. 1973) as holding that the primary or controlling consideration in determining a question of boundary, is the intent of the parties. We have no evidence to indicate that Adele recognized that her sons were possessing unequal parts of the “50 arpent tract” which had been equally divided, or that she intended to recognize or establish a boundary other than one based upon the half and half division of Ledel and Eugene’s “50 arpent tract.”
There is no manifest error in the determination that Ledel’s south line of the donated tract is the prolongation to the east of the boundary which recognized equal acreage owned by Ledel and Eugene in the “50 arpent tract.”
The trial court judgment is affirmed at plaintiffs’ costs.
Affirmed.